Michael DUNCAN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0302–CR–161.

Court of Appeals of Indiana.

Dec. 2, 2003.

Stuart T. Bench, Bench Law Office, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

### STATEMENT OF THE CASE

Michael Duncan ("Duncan") brings this interlocutory appeal arguing that the trial court erred in denying his motion to suppress the results of an alcohol blood test taken without his consent.

We reverse.

### ISSUE

Whether the trial court erroneously denied Duncan's motion to suppress.

### FACTS

During the later afternoon hours of Monday, August 12, 2001, Duncan was playing horseshoes with friends in the backyard of Larry Pavey's ("Larry") home in Marion County. Duncan had parked his pickup truck on the lawn and his wife, Christi Duncan ("Christi"), subsequently placed their son, Lucas, on a blanket in front of the pickup truck's right front wheel so that she could watch Lucas while Duncan played. After some time, Christi took her daughter inside the house to use the restroom and others also began moving inside.

At this point, Duncan moved the truck forward so that those remaining could lis-

ten to its radio. Larry then asked how Duncan maneuvered around Lucas. Because Duncan did not know where Lucas was, he ran to the rear of the pickup truck and found Lucas bleeding from the ears and nose.

Paramedics were called to the house and took Lucas to Wishard Hospital where he was pronounced dead. Detective Sergeant Reginald Roney ("Detective Sergeant Roney") subsequently arrived and spoke to "both parents and two witnesses" about the accident. (App. 19). At some point, Deputy Marc Hostetler ("Deputy Hostetler") also arrived, but he was instructed by his supervisors to go to Wishard Hospital and, if Lucas was dead, to advise Duncan of Indiana's implied consent warning and his Miranda rights.

When Hostetler arrived at the hospital, he and a chaplain informed Duncan that Lucas was dead. After allowing for a brief period of time for grieving by the parents, Hostetler asked Duncan if he had anything to say about the accident. Duncan responded that he did not have anything to say. Duncan also refused to take a portable breath test, and, after being advised of Indiana's implied consent warning, refused to take a chemical breath test. Hostetler advised Duncan of his Miranda rights and explained that the Marion County Sheriff Department's policy required that a blood sample be taken from drivers in all accidents involving a fatality. Although Duncan did not consent to the procedure, as stipulated by the parties, his blood was drawn and a subsequent test revealed a blood alcohol content of .106.

On August 16, 2002, Duncan was charged with operating a motor vehicle with an alcohol concentration of .08 or more while causing the death of Lucas, a class C felony. Because Duncan had a prior conviction for operating a motor vehicle while intoxicated within five years of the instant alleged offense, he was also charged with causing Lucas' death as a class B felony.

On January 9, 2003, Duncan filed a motion to suppress the results of his blood test. Specifically, Duncan alleged that his blood was drawn without a warrant or probable cause in violation of the Fourth Amendment and Article I, § 11 of the Indiana Constitution. On January 24 and 27, 2003, the trial court heard arguments. At the suppression hearing, Hostetler testified that when he arrived at the scene Duncan had already left for the hospital and that Deputy Baker and one other deputy remained to investigate. Upon arriving at the hospital, Hostetler stated that he did not feel comfortable giving Duncan any field sobriety tests under the circumstances and that he could not administer a breath test because he was not a certified operator. In addition, he testified, "It's my understanding that any time a fatality crash or accident takes place, that a blood draw would be drawn. And that it's also the procedure that the fatality team uses any time there is a fatality crash or accident." (Tr. 28).

Roney testified that he spoke with Duncan at the scene. The State asked Roney if he made "some observations about—about [Duncan's] speech and his breath and—and other mannerisms . . . ." (Tr. 36). After responding in the affirmative, the trial court specifically asked Roney to describe his observations. Roney merely testified that he "determined that due to Mr. Duncan's speech and mannerisms that he was intoxicated." (Tr. 37). In addition, Roney stated that he believed that Hostetler had left the scene of the accident before he arrived. However, on cross-examination, Roney was asked how it was possible for him to talk to Duncan if, according to Hostetler's testimony, Duncan had already left for the hospital when Hos-

tetler had arrived. Roney acknowledged that he could not remember whether he spoke to Duncan at the scene or at the hospital.

After hearing the evidence, the trial court found that the State did not need a warrant because exigent circumstances existed to justify drawing Duncan's blood. The trial court noted that the State had three hours [1] within which to draw a blood sample and the evidence of Duncan's intoxication would have metabolized before a search warrant could have been obtained. As a result, the trial court denied Duncan's motion to suppress.

### DECISION

■ In this interlocutory appeal, Duncan argues that the trial court improperly denied his motion to suppress. Specifically, he argues that the drawing of his blood without his consent violated his right to be free from unreasonable searches and seizures under the Fourth Amendment and Article I, § 11 of the Indiana Constitution because the police lacked probable cause to believe he was intoxicated. Even if the police had probable cause, Duncan also argues that there were no exigent circumstances to justify drawing his blood without a warrant.

Our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues. We determine whether substantial evidence of probative value exists to support the trial court's denial of the motion. We do not reweigh the evidence and we consider conflicting evidence most favorably to the trial court's ruling. However, this review is different from other sufficiency matters in that we must also consider

uncontested evidence that is favorable to the defendant.

*Simmons v. State*, 781 N.E.2d 1151 (Ind. Ct.App.2002) (citations omitted).

■ Both the Fourth Amendment and Article I, § 11 afford protection from unreasonable searches. *Ammons v. State*, 770 N.E.2d 927, 930–31 (Ind.Ct.App.2002), *trans. denied.* The drawing of blood for the purpose of administering a compulsory blood test is a search. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Under the Fourth Amendment, it is per se unreasonable for a search to be conducted without a warrant issued upon probable cause. *Ammons*, 770 N.E.2d 927. However, there are a few established and well-delineated exceptions to the warrant requirement. *Crabtree v. State*, 762 N.E.2d 217 (Ind.Ct.App.2002). Under Article I, § 11, the State bears the burden of showing that the search was reasonable in light of the totality of the circumstances. *Ammons*, 770 N.E.2d 927.

■ It is acceptable for police to draw a person's blood without their consent if (1) there is probable cause to believe that the person has operated a vehicle while intoxicated; (2) the dissipation of alcohol in the blood creates exigent circumstances under which there is no time to secure a search warrant; (3) the test chosen to measure the person's blood alcohol concentration is a reasonable one; and (4) the test is performed in a reasonable manner. *Schmerber*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. However, these standards are the outer limits of what constitutes acceptable police conduct in taking blood samples from unwilling people. *Brown v. State*, 774 N.E.2d 1001 (Ind.Ct.App.2002). In addition, the Supreme Court noted that

1. Ind.Code § 9–30–6–2(c) provides that law enforcement officers have three hours after obtaining probable cause that a person has

operated a vehicle while intoxicated to administer a chemical test.

the interests in human dignity and privacy protected by Fourth Amendment forbid police from making any such intrusions on the mere chance that desired evidence might be obtained. Specifically, the Court stated, "In the absence of a *clear* indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search." *Schmerber,* 384 U.S. at 768, 86 S.Ct. at 1835 (emphasis added); *see also Hannoy v. State,* 789 N.E.2d 977 (Ind.Ct.App.2003).

In *Schmerber,* the Court found that police had probable cause to believe that the defendant had operated a vehicle while intoxicated. The police officer "testified that [the defendant's] eyes were 'bloodshot, watery, sort of a glassy appearance.' The officer saw [the defendant] again at the hospital, within two hours of the accident. There he noticed similar symptoms of drunkenness." *Id.* at 384 U.S. 768, 86 S.Ct. 1834–35.

■ In this case, we find that the record does not contain "a clear indication" that Duncan was intoxicated at the time of the incident, thereby supplying the police with the probable cause necessary to compel Duncan to submit to the drawing of his blood. *Id.* The State argues that Indiana Code § 9–30–7 permits police to have blood withdrawn anytime a driver has been involved in an fatal accident or an accident involving serious bodily injury. It is true that Indiana Code § 9–30–7–2 provides that persons impliedly consent to submit to a portable breath test or a chemical test as a condition of operating a vehicle in Indiana. In addition,

> A law enforcement officer shall *offer* a portable breath test or chemical test to any person who the officer has reason to believe operated a vehicle that was involved in a fatal accident or an accident involving serious bodily injury. If:

(1) the results of a portable breath test indicate the presence of alcohol;

(2) the results of a portable breath test do not indicate the presence of alcohol but the law enforcement officer has probable cause to believe the person is under the influence of a controlled substance or another drug; or

(3) the person refuses to submit to a portable breath test;

the law enforcement officer shall *offer* a chemical test to the person.

Ind.Code § 9–30–7–3(a) (emphasis added). However, "[n]othing in Indiana Code § 9–30–7 authorizes an officer to forcibly take a blood sample if actual consent to a chemical test is not obtained." *Hannoy,* 789 N.E.2d at 983. This chapter simply permits police to offer a chemical test if there is evidence that a person operated a vehicle involved in an accident resulting in serious bodily injury or a fatality. *Brown v. State,* 744 N.E.2d 989 (Ind.Ct.App.2001). There "is no requirement that probable cause of intoxication be shown before a driver can be *asked* to submit to a chemical test under Indiana Code section 9–30–7–3." *Id.* at 993 (emphasis added).

■ However, police exceed the bounds of *Schmerber* when they move from merely asking people to take a chemical test to compelling the insertion of a needle into their bodies without "a clear indication" of intoxication. 384 U.S. at 768, 86 S.Ct. at 1835. It is for this reason that we have recently invalidated the Marion County Sheriff Department policy requiring the withdrawal of blood from every person operating a vehicle involved in a fatal accident. *Hannoy,* 789 N.E.2d 977.

■ In this case, Roney failed to *clearly* indicate why he thought Duncan was intoxicated. Even when the trial court specifically asked him to describe his observations, Roney merely said he "determined that due to Mr. Duncan's speech

and mannerisms that he was intoxicated." (Tr. 37). In addition, Roney indicated on the affidavit for probable cause that his sole basis for believing Duncan was intoxicated was that he saw "[a]lcohol beverage containers in view." (App. 21). As a result, his testimony is insufficient to establish probable cause to compel Duncan to submit to a blood draw.[2]

> Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned. The requirement that a warrant be obtained is a requirement that inferences to support the search 'be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great.

*Schmerber*, 384 U.S. at 769, 86 S.Ct. at 1835. In making an exception to the warrant requirement in *Schmerber*, thereby allowing police to draw their own inferences, the Supreme Court held that probable cause must be *clearly* indicated, and that the officer in that case plainly had demonstrated probable cause through his testimony. Here, there is insufficient evidence of probative value to support the trial court's denial of Duncan's motion to suppress.

Reversed.

MAY, J., and BARNES, J., concur.

---

2. We take judicial notice of the record that the accident occurred on a Monday at approximately 5:50 pm. We further note the State's failure to present evidence of an exigent circumstance that would have prevented it from obtaining a search warrant.