Charles W. SCHLESINGER,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 64A05–0310–CR–553.

Court of Appeals of Indiana.

July 19, 2004.

Mitchell A. Peters, Hilary R. Hall, Gouveia & Miller, Merrillville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

Charles W. Schlesinger appeals from his conviction for operating a vehicle with a

blood alcohol content of at least .08% but not more than .15%,[1] a Class C misdemeanor, raising the following dispositive issue for review: whether the trial court erred in admitting the results of a hospital toxicology blood test where the test was obtained without a warrant and was not necessary for Schlesinger's medical care.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On May 10, 2002, after an evening out with friends at various bars, Schlesinger was driving home when he was involved in an automobile accident in which he, his occupant, and the two occupants of the other car were injured. Deputy Curt Jones of the Porter County Sheriff's Department was at the scene of the accident. He was administering field sobriety tests to Schlesinger when he was interrupted by emergency medical personnel. Although Schlesinger told Jones that he had consumed a couple of alcoholic drinks an hour before driving, he passed the field sobriety tests which Jones administered. Medical personnel took Schlesinger to Porter Memorial Hospital, where he was treated for relatively minor injuries, including some cuts and a dislocated finger joint. At the hospital, hospital personnel drew blood. Deputy Jones requested that an additional vial be drawn for his use. Deputy Jones sent that vial to the Indiana Department of Toxicology for analysis (the "State" sample), while hospital personnel analyzed the other one ("Hospital" sample). The results of the State sample, which were available a few weeks later, showed that Schlesinger's blood alcohol content was .10%. The Hospital sample, which was analyzed that night, showed that Schlesinger's blood alcohol content was .13%. Schlesinger was arrested and charged with a number of crimes related to his operating a vehicle under the influence of alcohol.

Schlesinger was tried by jury. At trial, the State offered the toxicology results of the Hospital sample. The trial court admitted the results over Schlesinger's objection. Later, the trial court admitted the results of the State sample upon the request of Schlesinger's trial counsel. The jury returned a guilty verdict on the charge of operating with a blood alcohol content of at least .08%. The trial court entered conviction and sentenced Schlesinger accordingly. He now appeals.

## DISCUSSION AND DECISION

Schlesinger argues that the trial court erred in admitting the results of the Hospital sample. The evidentiary rulings of a trial court are afforded great deference on appeal and are overturned only upon a showing of an abuse of discretion. *Reynolds v. State*, 797 N.E.2d 864, 867 (Ind.Ct. App.2003); *Herrera v. State*, 710 N.E.2d 931, 935 (Ind.Ct.App.1999). A trial court's decision to admit evidence will not be reversed absent a showing of a manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Herrera*, 710 N.E.2d at 935.

The Fourth Amendment to the United States Constitution prohibits warrantless searches. *Duncan v. State*, 799 N.E.2d 538, 542 (Ind.Ct.App.2003); *Hannoy v. State*, 789 N.E.2d 977, 982 (Ind.Ct. App.2003), *aff'd on rehearing* 793 N.E.2d 1109, *trans. denied.* Under the Fourth Amendment, it is per se unreasonable for a search to be conducted without a warrant issued upon probable cause. *Duncan*, 799 N.E.2d at 542. However, there are a few established and well-delineated exceptions to the warrant requirement. *Id.; Han-*

---

1. *See* IC 9–30–5–1.

*noy,* 789 N.E.2d at 982. If the search is conducted without a warrant, the burden is upon the State to prove that, at the time of the search, an exception to the warrant requirement existed. *Hannoy,* 789 N.E.2d at 982. The drawing of blood for the purpose of administering a compulsory blood test is a search. *Duncan,* 799 N.E.2d at 542.

In *Hannoy,* 789 N.E.2d at 982, we reviewed United States Supreme Court cases concerning the ways in which law enforcement may obtain blood for testing. There, we concluded that to obtain a blood sample, law enforcement officers must have (1) a warrant, (2) probable cause, or (3) consent. *Id.* at 984.

▆▆ Here, the parties agree that law enforcement officers did not have a warrant to obtain a sample of Schlesinger's blood. Thus, we turn to probable cause. To obtain a blood sample based on probable cause, the law enforcement officer must have probable cause that a driver's blood will contain evidence of alcohol or illegal substances. *Id.* at 985–86. In fact, police may not compel an individual to submit to a blood draw without a clear indication of intoxication. *Duncan,* 799 N.E.2d at 543–44.

▆▆ Here, although Deputy Jones was aware that Schlesinger had consumed alcoholic beverages earlier in the evening, he testified that Schlesinger performed correctly on each of the field sobriety tests he administered. Moreover, Deputy Jones's actions demonstrate that he did not believe he had probable cause to obtain the blood sample. After the blood was drawn, Deputy Jones completed a Porter Memorial Hospital form for release of the State blood sample. The form asked him to check a box to indicate whether the sample was obtained in the normal course of treatment of the patient, by consent, or pursuant to probable cause. Deputy Jones

failed to indicate on the form that he believed that he had probable cause. Under the circumstances, we conclude that Deputy Jones lacked probable cause to order the blood draw. *See also Duncan,* 799 N.E.2d at 543 (finding no clear indication of intoxication to supply police with probable cause to compel defendant to submit to blood draw).

▆▆ Finally, a blood sample may also be obtained if the person consents. A consent to a search must be knowingly and voluntarily given. *Hannoy,* 789 N.E.2d at 987. When the State relies upon consent to justify a warrantless search, it has the burden of proving that the consent was, in fact, freely and voluntarily given. *Id.* at 988. A consent to search is invalid if it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law. *Id.* Consent cannot be conclusively presumed from a verbal expression of assent unless the court determines, from the totality of the circumstances, that the verbal assent reflected an understanding, uncoerced, and unequivocal. *Id.*

In *Hannoy,* 789 N.E.2d at 988, we examined the State's claim that blood for a blood alcohol content test was drawn pursuant to the defendant's consent. There, the officer involved testified that he never discussed the implied consent law with the defendant, never told him why the blood was being drawn, never asked for his consent, and had no conversation with the defendant while he was at the hospital. The nurse who drew the defendant's blood testified that the officer told the defendant that he had been involved in an accident and he had the duty to check the defendant's blood for alcohol. We concluded that the evidence showed that the defendant did not consent to the search and that the officer's words could not be construed

as a request for the defendant's consent because it implied that the drawing of the defendant's blood was mandatory and that the defendant had no choice in the matter. We noted that any "consent" given in response to such a statement is a submission to the supremacy of the law and not freely and voluntarily given. We therefore concluded that the State failed to meet its burden of proving that the defendant gave his actual, knowing, and voluntary consent to the drawing and testing of his blood for law enforcement purposes. *Id.*

■ Similarly, Schlesinger testified that although a hospital employee drew blood, he was not advised as to the purpose of the blood draw. Moreover, he testified that Deputy Jones did not ask for his consent and that he did not sign a written consent form. Deputy Jones also testified that Schlesinger did not sign a consent form. Although Schlesinger signed a form generally consenting to treatment, the form did not specify that a blood alcohol test would be performed. As in *Hannoy*, we conclude that Schlesinger did not knowingly and voluntarily consent to the testing of his blood alcohol level for law enforcement purposes.

Nonetheless, in *Hannoy* we identified an alternative means by which law enforcement personnel could obtain a subject's blood alcohol level in the absence of a warrant, probable cause, or consent. We observed that officers may acquire test results that medical personnel have obtained during the normal course of treatment. *Id.* at 992.

In this case, however, there is no evidence in the record that the blood alcohol content test was performed for medical reasons. Schlesinger was taken to the hospital and treated for cuts and a dislocated finger. Deputy Jones testified that Schlesinger's blood was not obtained in the normal course of treatment and that there

was no evidence that the doctor treating Schlesinger wanted to perform a blood alcohol test to aid in treating him. The State presented no evidence that the test was necessary for medical treatment. Because the State has the burden of proving that the search was reasonable, we find that the State failed to meet its burden here.

■ Where evidentiary error has occurred, reversal is not required if it is apparent that the fact finder did not rely upon the improper evidence in reaching the verdict. *Id.* at 989. In determining whether improper evidence was relied upon in reaching a verdict, we must consider the probable impact of the evidence upon the fact finder. *Id.* This court may conclude that the trial court did not rely upon improper evidence where there was other overwhelming evidence of guilt. *Id.*

■ In this case, the only charge upon which Schlesinger was convicted was operating with a blood alcohol content over .08% but less than .15%. Schlesinger's counsel advocated for the exclusion of the results of the test of the Hospital sample, but did not prevail. The trial court admitted the results over his objection, and the jury therefore heard evidence that these test results showed a blood alcohol content of .13%. After the admission of these results, Schlesinger's counsel admitted the results of the test of the State sample. The State sample was inconsistent with the Hospital sample results and was admitted in an effort to cast doubt on the reliability of the Hospital test results. But for the erroneous admission of the Hospital test results, the State sample results would not have been admitted. Under these circumstances, we cannot conclude that the error in the admission of the results was harmless. *See id.* (finding erroneous admission of blood alcohol test not

harmless, even though trial court properly admitted results of second test).

Reversed.

NAJAM, J., and RILEY, J., concur.