**Larry W. JUSTICE,
Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 55A01–8909–CR–359.**

Court of Appeals of Indiana,
First District.

April 16, 1990.

Phillip R. Smith, Wehrle & Smith, Martinsville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

BAKER, Judge.

### STATEMENT OF THE CASE

Defendant-appellant, Larry W. Justice (Justice), appeals his conviction for operating a vehicle while intoxicated, a Class D felony.[1]

We affirm.

### STATEMENT OF THE FACTS

The facts most favorable to the verdict reveal that during the afternoon of January 9, 1988, Justice visited his brother's house where he consumed 10 to 12 beers. At approximately 10:30 p.m., Justice drove to a bar where he consumed three additional beers. Justice then left the bar and began driving home.

Shortly after midnight on January 10, 1988, Martinsville Police Officer David Chatten (Officer Chatten) observed Justice driving his Chevrolet pickup truck in an erratic manner. Officer Chatten saw Justice's truck go off the side of the road to the right, then move back on the road and cross the center line. After engaging his

---

1. IND.CODE 9–11–2–2; IND.CODE 9–11–2–3.

emergency lights, Officer Chatten stopped Justice's truck. Officer Chatten approached the truck and asked Justice to produce his driver's license and vehicle registration. Officer Chatten noticed that Justice smelled strongly of alcohol. After fumbling through his wallet and glovebox for a couple of minutes, Justice handed Officer Chatten a vehicle registration and his employee identification card.

At Officer Chatten's request, Justice exited his truck. He had difficulty standing up and had to lean against the truck before pulling himself up to walk to the patrol car. Officer Chatten did not believe the portion of the highway where they were stopped was safe to conduct any field sobriety tests, so he transported Justice to the Morgan County Jail. Justice agreed to perform three field sobriety tests and failed all of them. Justice completely missed his nose when he tried to touch it with both his left and right hand. He staggered and stumbled when attempting to walk a straight line. When Officer Chatten asked Justice to count to 20 with one leg raised off the ground, Justice only reached four before he had to put his foot back on the ground for balance. Officer Chatten noticed that Justice's speech was slurred and his eyes were bloodshot. Officer Chatten then advised Justice of Indiana's implied consent law and Justice agreed to take a chemical test. In attempting to take the intoxilyzer breath test, Justice twice failed to provide an adequate air sample. After Justice's first attempt, the officer administering the test blew into the machine to confirm its working order.

Upon Justice's unsuccessful attempts to take the breath tests, Officer Chatten asked Justice if he would submit to a blood test. Justice agreed and Officer Chatten took him to the Morgan County Hospital. Upon arriving at the hospital, Justice refused to sign the consent form authorizing the taking of the blood test. Officer Chatten told Justice that a blood sample would be taken even if they had to hold him down to get it. The sample was subsequently tested at the State Police Laboratory. The test results revealed Justice's blood contained .25% alcohol.

Justice was charged by Information with operating a vehicle while intoxicated, a Class D felony, and operating a vehicle with ten-hundredths percent or more by weight of alcohol in blood, a Class D felony. The trial court, over Justice's objections, admitted testimony and exhibits regarding the testing of his blood sample. A jury found Justice guilty on both counts and the trial court entered judgment on the first count. Justice appeals.

## ISSUES

Justice presents three issues for our review:

I. Whether the trial court erred in admitting testimony and exhibits regarding the results of the blood alcohol test performed on Justice's blood.

II. Whether the trial court erred in refusing to give Justice's Tendered Instruction No. 1 regarding the statutory requirement that a physician or someone under the control of a physician must deliver a blood sample to a law enforcement officer who requests it as part of a criminal investigation.

III. Whether the trial court erred in placing a juror out of the order from which the names were drawn for the venire.

## DISCUSSION AND DECISION

### I.

■ Justice first contends the trial court erred in admitting evidence and testimony relating to the testing of his blood sample because the sample was obtained without his consent. Justice argues that the blood sample was taken in violation of his right to be free from unreasonable searches and seizures as guaranteed by the fourth and fourteenth amendments to the United States Constitution and article one, section 11 of the Indiana Constitution. The State responds that the police were justified in obtaining the blood sample without Justice's consent because Officer Chatten had probable cause to believe Justice had been driving while intoxicated and the presence

of exigent circumstances negated the requirement of a search warrant.

To support its position, the State directs our attention to the United States Supreme Court's decision in *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. After noting that intrusions beyond the body's surface implicate fundamental human interests in dignity and privacy, the Supreme Court held in *Schmerber* that the police were justified in taking a nonconsensual blood test from the defendant who was undergoing treatment for injuries suffered in an accident involving the car he had apparently been driving. The court noted that the taking of a blood sample without permission did not violate the fourth amendment so long as the circumstances justified taking the sample, and the means and procedures used to obtain the sample were reasonable. The court found that the circumstances presented in *Schmerber* justified the taking of the sample because there was probable cause to believe Schmerber had been driving while under the influence of alcohol and the inevitable dissipation of alcohol in the blood created exigent circumstances.

It is important to note that the circumstances noted by the Supreme Court in *Schmerber*, and subsequently relied on by Indiana courts, are significantly different from the circumstances in the present case. When discussing the presence of exigent circumstances arising from the dissipation of alcohol in the blood, the Supreme Court stated:

> *Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident,* there was no time to seek out a magistrate and secure a warrant. *Given these special facts,* we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

*Schmerber, supra* at 770–71, 86 S.Ct. at 1835–36 (emphasis added). According to

this discussion, the fact that Schmerber was involved in an accident requiring treatment and police investigation is what rendered the dissipation of alcohol in the blood an exigent circumstance. Absent an auto accident, the dissipation of alcohol in the blood does not alone create exigent circumstances.

Indiana courts have taken an approach similar to *Schmerber*. *See Zimmerman v. State* (1984), Ind.App., 469 N.E.2d 11 (results of blood test admissible after defendant signed consent form in hospital where he was taken for treatment following collision involving automobile he was driving); *Schultz v. State* (1981), Ind.App., 417 N.E.2d 1127 (evidence of blood alcohol level admissible when blood sample taken while defendant was undergoing treatment for injuries sustained in automobile accident involving car he was driving); *Clark v. State* (1978), 175 Ind.App. 391, 372 N.E.2d 185 (results of blood test admissible when obtained after defendant signed waiver at hospital where he was taken for treatment of his injuries sustained in collision resulting from his involvement in drag racing); *DeVaney v. State* (1972), 259 Ind. 483, 288 N.E.2d 732 (evidence of defendant's blood alcohol level admissible absent his consent when blood was drawn at hospital where he was taken following automobile accident involving car he was driving).[2]

■ The standards set forth in *Schmerber* are the outer limits of what constitutes acceptable police behavior in obtaining blood samples from unwilling people. The states, however, are free to further limit police conduct within the confines of *Schmerber*. Such limitation is authorized by the State's exercise of its police power. The term police power "generally concerns the power inherent in government to enact laws, within constitutional limits, to promote the order, safety, health, morals, and general welfare of society." *Williams v. State* (1983), Ind.App., 444 N.E.2d 888, 890.

■ Indiana's General Assembly invoked a valid exercise of its police power when it

---

**2.** The State cites all of these cases in its brief to support its position that the presence of exigent

circumstances negated the need for a warrant.

enacted the implied consent laws which define acceptable police behavior within the constitutional limits set forth in *Schmerber*. IND.CODE 9–11–4–1 to –18. The implied consent laws seek to keep Indiana highways safe and protect the public by removing the threat posed by the presence of drunk drivers on the highways. *Roberts v. State* (1985), Ind.App., 474 N.E.2d 144. The laws provide a statutory scheme through which drunk drivers can be removed from the road. In particular, IND. CODE 9–11–4–7 provides:

> Sec. 7.  (a) If a person refuses to submit to a chemical test, the arresting officer shall inform the person that refusal will result in the suspension of the person's driving privileges.
>
> (b) If a person refuses to submit to a chemical test after having been advised that the refusal will result in the suspension of driving privileges or submits to a chemical test that results in prima facie evidence of intoxication, the arresting officer shall forthwith:
>
> > (1) obtain the person's driving license or permit if the person is in possession of the document and issue a receipt valid until the person's driving privileges are suspended by the bureau;
> >
> > (2) submit a probable cause affidavit to the prosecuting attorney of the county in which the alleged offense occurred; and
> >
> > (3) send a copy of the probable cause affidavit submitted under subsection (2) to the bureau.[3]

The statute clearly sets forth a police officer's duties when a person refuses to submit to a chemical test.[4] The officer must first advise the person that his refusal to take the test will result in the suspension of his driving privileges. If the person still refuses to consent to a chemical test, the officer must then obtain his driver's license, issue a receipt, and submit a probable cause affidavit to the prosecuting attorney and the bureau of motor vehicles. At the time this incident occurred, the statute did not authorize a police officer to order the taking of a blood test once a person refuses to consent.[5]

Officer Chatten's conduct in obtaining the blood sample from Justice violated the governing guidelines contained in the implied consent laws. The seizure of the blood sample was, therefore, unlawful. Evidence obtained by an unlawful seizure is inadmissible at the defendant's trial. *Taylor v. State* (1984), Ind.App., 464 N.E.2d 1333; *Hewell v. State* (1984), Ind. App., 471 N.E.2d 1235, *trans. denied.* "This exclusionary rule protects the defendant's right to be free from unreasonable searches and seizures under the Indiana and United States constitutions. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.E.2d 1081; *Callender v. State* (1923), 193 Ind. 91, 138 N.E. 817." *Hewell, supra* at 1239.

■ The trial court's error in admitting evidence relating to the blood sample, however, is subject to harmless error analysis. *Hewell, supra.* "It is the rule that admission of improper evidence which tends only to disclose a fact proven by other properly admitted evidence is harmless error. *Williams v. State* (1981), [275] Ind. [603], 419 N.E.2d 134; *Smith v. State* (1981), [275] Ind. [642], 419 N.E.2d 743." *Pollard*

---

3. The statute as quoted in this opinion contains the provisions applicable at the time the incident in question occurred. IND.CODE 9–11–4–7(b)(1) was amended in 1989 to delete the phrase "the person's driving privileges are suspended by the bureau" and substitute the phrase "the initial hearing of the matter held under IC 35–33–7–1."

4. A chemical test is defined in the statute to mean "an analysis of a person's blood, breath, urine, or other bodily substance for the determination of the presence of alcohol, a controlled substance, or a drug." IND.CODE 9–11–1–3.

5. We recognize that IND.CODE 9–11–4–6(g) allows the taking of a blood test without a persons' consent. That section, however, did not become effective until March 5, 1988, two months following the January 10, 1988, incident before us. Further, such blood tests are allowed under the statute when a person has already been transported to the hospital for treatment following his involvement in a motor vehicle accident resulting in the serious bodily injury or death of another. As we have already discussed, Justice was not involved in a motor vehicle accident.

*v. State* (1982), Ind.App., 439 N.E.2d 177, 184. As set forth in the statement of the facts, there was overwhelming evidence of Justice's intoxication. He admitted drinking 13 to 15 beers over the course of the day, three of which he drank within an hour and a half of being stopped by Officer Chatten. Justice was driving erratically and was unable to discern which piece of identification in his wallet was his driver's license. He had difficulty standing and failed three separate field sobriety tests. He had slurred speech and bloodshot eyes. The trial court's admission of the evidence relating to the blood test served only to disclose the fact that Justice was intoxicated. Because the fact of his intoxication had already been proved by properly admitted evidence, the trial court's error in admitting the blood test evidence was harmless.[6]

## II.

Justice contends in his second claim of error that the trial court improperly refused to give his tendered instruction regarding the statutory provisions describing who is qualified to take a blood test. Because we have already determined it was error to admit the blood test evidence in the first place, there is no need to address the lack of jury instructions related thereto.

## III.

Justice argues that the trial court's placement of a juror on the venire out of the order from which the names were drawn to form the original venire infringed upon his rights and jeopardized the fairness of his trial. Justice argues the trial court's action violated IND.CODE 33–4–5–9(d) which provides:

> The sheriff or bailiff shall call the jurors to the jury box in the same order in which their names were drawn. Jurors shall serve for three (3) months, or for a shorter period if a shorter period is specified in the judge's written order.

■ The State responds that Justice has waived this argument on appeal because the record does not include a transcript of the jury selection proceedings. While we agree with the State's position that an appellant's failure to present a proper record for appeal to facilitate an intelligent review of the errors alleged is normally grounds for waiver, *Cox v. State* (1985), Ind., 475 N.E.2d 664, we do not believe Justice has failed to present an adequate record in this appeal. Attached to Justice's motion to correct error was an affidavit from his attorney describing the alleged irregularities in the jury selection process and stating that his timely objection was overruled by the court. At the hearing on Justice's motion, the trial court acknowledged that the affidavit accurately described the proceedings with respect to the juror in question. The record also indicates that Justice peremptorily challenged the juror in question while exercising a total of four of his five available peremptory challenges. There is adequate information contained in the record to facilitate a meaningful review by this court.

■ "Minor irregularities in compliance with the statutes directing selection and calling of jurors do not constitute reversible error." *Wilson v. State* (1989), Ind. App., 536 N.E.2d 1037, 1040, *trans. denied* (citation omitted). In order to obtain a reversal, Justice must affirmatively show error prejudicial to his substantial rights. *Underwood v. State* (1989), Ind., 535 N.E.2d 507, 513, *cert. denied*, —— U.S. ——, 110 S.Ct. 257, 107 L.Ed.2d 206. Justice has failed in this regard. Justice's rights were not harmed because the juror was challenged peremptorily. Any potential harm presented by the juror in question sitting on the jury was relieved when she was removed by the exercise of a peremptory challenge. Justice suggests he was harmed because he was forced to use a peremptory challenge he would not otherwise have exercised. We fail to see how this amounts to error when Justice did not

---

6. Justice presents several other grounds upon which he argues the blood test evidence was inadmissible. We need not reach those claims, however, because we have already decided the evidence was erroneously, although harmlessly, admitted.

exercise all of his allotted peremptory challenges. *See Sutton v. State* (1957), 237 Ind. 305, 145 N.E.2d 425 (appellants waived error on appeal by failing to show exhaustion of their peremptory challenges when alleging error in court's refusal to remove juror for cause).

Judgment affirmed.

RATLIFF, C.J., and SULLIVAN, J., concur.