**Curtis R. GUY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 03A01–9508–CR–252.

Court of Appeals of Indiana.

April 17, 1997.

---

James W. Long, Columbus, for Appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Curtis R. Guy appeals his convictions for two counts of Reckless Homicide,[1] both Class C felonies, two counts of Operating a Vehicle While Intoxicated or with a Blood Alcohol Content of at Least .10% or More Resulting in Death,[2] both Class C felonies, two counts of Operating a Vehicle While Intoxicated or With a Blood Alcohol Content of at Least .10% or More Resulting in Serious Bodily Injury,[3] both Class D felonies, and Operating a Vehicle While Intoxicated,[4] a Class D felony. Specifically, Guy contends that the trial court erred by denying his motion to suppress evidence of his blood alcohol content and his two motions for a directed verdict.

### FACTS

The facts most favorable to the verdict reveal that on the morning of October 3, 1993, Guy awoke at his wife's residence on U.S. 31 south of Columbus, Indiana, and consumed three or four beers. Thereafter, Guy drove to his home in Newbern, Indiana, to mow his yard and complete several household chores. After mowing the yard, Guy consumed five or six more beers and prepared to return to his wife's residence. In total, Guy consumed between eight and twelve beers during the day.

At approximately 5:59 p.m., as Guy was driving back to his wife's residence, his car veered out of the westbound lane of State Road 46 and onto the berm. Guy then pulled his car back onto the road, crossed the centerline and struck an eastbound 1992 Pontiac Grand Am. As a result of the collision, Katherine and Sherry Lewis, two of the occupants of the Pontiac, were killed. Additionally, Lee Ann Lewis and Anna Lewis, the other occupants of the Pontiac, and Guy sustained serious injuries.

Shortly thereafter, Sergeant Robert L. Amos of the Bartholomew County Sheriff's Department arrived at the scene. When he approached Guy's car, Sergeant Amos smelled alcohol and noticed open beer cans in the vehicle. Several other witnesses at the scene also indicated that they smelled alcohol on Guy's breath, that his speech was slurred and that he was cursing, loud and uncooperative. Record at 444, 446–47, 466, 479, 591, 594, 631, 633–34, 635. Sergeant Amos then radioed in a request for a blood alcohol test on both drivers at 7:14 p.m.

At approximately 7:20 p.m., Guy was transported to the Bartholomew County Hospital, where a sample of his blood was drawn. Subsequent analysis of the sample revealed

---

1. IND.CODE § 35–42–1–5.

2. IND.CODE § 9–30–5–5.

3. IND.CODE § 9–30–5–4.

4. IND.CODE § 9–30–5–3.

that Guy's serum alcohol content was .238%, which corresponds to a whole blood alcohol content of .199%. R. at 1012.

On October 18, 1993, Guy was charged with two counts of reckless homicide, both class C felonies, two counts of driving while intoxicated or with a blood alcohol content of at least .10% resulting in death, both class C felonies, two counts of driving while intoxicated or with a blood alcohol content of .10% resulting in serious bodily injury, both class D felonies, operating a vehicle while intoxicated, a class D felony, Operating a Vehicle While Intoxicated, a Class A misdemeanor,[5] and Operating a Vehicle With at Least .10% By Weight of Alcohol in the Blood,[6] a Class C misdemeanor. Prior to trial, Guy filed a motion to suppress the results of his blood test on the grounds that Sergeant Amos "failed to comply with Indiana Code 9–30–6–6(g) in requesting the blood alcohol content test." R. at 90. After a hearing, the trial court denied Guy's motion.

Thereafter, a jury trial was conducted. After the State rested its case, Guy moved for a directed verdict on the reckless homicide charges, arguing that the evidence presented did not establish that he had acted recklessly. In addition, he moved for a directed verdict on the remaining counts on the grounds that the State had not produced prima facie evidence of Guy's intoxication or impairment. The trial court subsequently denied both motions and Guy proceeded to present evidence.

After hearing all of the evidence, the jury convicted Guy as charged. Thereafter, the trial court entered judgment of conviction on all the felony charges, but did not enter judgment of conviction on the misdemeanor charges. The court then sentenced Guy to eight years imprisonment on his first conviction for reckless homicide, eight years with one year suspended and to be served on probation on his second conviction for reckless homicide, and three years for driving while intoxicated.[7] The sentences were to be served consecutively for a total term of nineteen years imprisonment. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. Motion to Suppress

Guy contends that the trial court erred in denying his motion to suppress the blood alcohol content test results. Specifically, Guy argues that the test results were inadmissible because Sergeant Amos did not comply with I.C. § 9–30–6–6(g),[8] which requires a law enforcement officer requesting BAC information to certify in writing that he had probable cause to believe that the person from whom the blood sample is to be drawn had violated IND. CODE § 9–30–5 and that the collision occurred not more than three hours before the request for the blood test.

Initially, we note that Guy failed to object to the admission of the blood test results when the evidence was offered at trial. Although Guy filed a motion to suppress the evidence prior to trial and renewed the motion at trial, a motion to suppress does not preserve an error for appellate review. *Poulton v. State*, 666 N.E.2d 390, 393 (Ind. 1996); *see also Moss v. State*, 165 Ind.App.

---

5. IND.CODE § 9–30–5–2.

6. IND.CODE § 9–30–5–1.

7. The record does not indicate what sentencing action the trial court took with regard to Guy's other convictions.

8. In pertinent part, I.C. § 9–30–6–6(g) provides as follows:

A physician or a person trained in obtaining bodily substances and acting under the direction of, or under a protocol prepared by, a physician shall obtain a blood ... sample if the following exist:

(1) A law enforcement officer requests that the sample be drawn.

(2) The law enforcement officer has certified in writing the following:

(A) That the officer has probable cause to believe the person from whom the sample is obtained has violated IC 9–30–5.

(B) That the person from whom the sample is to be obtained has been transported to a hospital or other medical facility.

(C) That the person for whom the sample is to be obtained has been involved in a motor vehicle accident that resulted in the serious bodily injury or death of another.

(D) That the accident that caused the serious bodily injury or death of another occurred not more than three (3) hours before the time the sample is requested.

502, 511–12, 335 N.E.2d 633, 634 (1975) (oral motion to suppress evidence at trial does not eliminate requirement of contemporaneous objection). As a result, Guy has waived this issue on appeal.

 Notwithstanding waiver, the trial court did not err in denying Guy's motion to suppress the blood alcohol content test results. As this court has previously explained, I.C. § 9–30–6–6(g) was intended to assist law enforcement officers in obtaining evidence of intoxication by providing them with a mechanism to compel reluctant physicians to draw blood samples, rather than as a device to exclude evidence. *Spriggs v. State*, 671 N.E.2d 470, 472 (Ind.Ct.App.1996); *State v. Robbins*, 549 N.E.2d 1107, 1109–10 (Ind.Ct. App.1990). As a result, the certification requirements of subsection (g) are merely a tool to acquire BAC evidence and only apply when a physician refuses to draw a blood sample. *Spriggs*, 671 N.E.2d at 472; *Robbins*, 549 N.E.2d at 1110.

Here, the record reveals that the hospital physician, Dr. Lagos, did not refuse to draw a blood sample. In fact, the record reveals that Dr. Lagos ordered the blood draw and blood alcohol analysis himself for medical purposes. R. at 308–10, 324. Therefore, I.C. § 9–30–6–6(g) is not applicable to this case. Thus, the trial court did not err in denying Guy's motion to suppress.

## II. Directed Verdicts

Next, Guy contends that the trial court erred in denying his motions for a directed verdict. Specifically, he argues that the evidence presented at trial did not establish that he acted recklessly and, therefore, could not support a conviction for reckless homicide. In addition, he contends that his remaining charges were not supported by sufficient evidence because the State did not produce prima facie evidence of Guy's intoxication or impairment.

 Initially, we note that Guy presented evidence after the denial of his motions for a directed verdict. As a result, he has waived this issue for appellate review. *Snow v. State*, 560 N.E.2d 69, 74 (Ind.Ct.App.1990) (defendant waived error in denial of motion for directed verdict by presenting evidence following denial of motion), *trans. denied.* Notwithstanding waiver, the trial court did not err in denying Guy's motions.

 In order for a trial court to grant a motion for a directed verdict, there must be a total lack of evidence on an essential element of the crime or the evidence must be without conflict and susceptible to only an inference in favor of the defendant's innocence. *Barrett v. State*, 634 N.E.2d 835, 837 (Ind.Ct. App.1994). If the evidence is sufficient to sustain a conviction on appeal, then the trial court's denial of a motion for a directed verdict cannot be in error. *Id.* When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor reassess the credibility of the witnesses; rather, we will consider only the evidence favorable to the verdict and reasonable inferences to be drawn from that evidence. *Id.* If there is substantial evidence of probative value to support the conclusions of the trier of fact, we shall affirm the conviction. *Id.*

### A. Reckless Homicide

 First, we address Guy's contention that he was entitled to a directed verdict on the reckless homicide charges. A person who recklessly kills another human being commits reckless homicide. I.C. § 35–42–1–5. A person engages in conduct "recklessly" if he engages in conduct in plain, conscious and unjustifiable disregard of the harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. I.C. 35–41–2–2(c); *Nichols v. State*, 591 N.E.2d 134, 137 (Ind.1992). Driving while intoxicated in conjunction with excessive speed or driving in a dangerous manner is sufficient to sustain a conviction of reckless homicide. *Young v. State*, 161 Ind. App. 532, 546, 316 N.E.2d 435, 443 (1974).

 Here, the facts most favorable to the judgment reveal that Guy had consumed as many as twelve beers prior to driving his vehicle and that his blood alcohol level was approximately .20%, which is twice the legal limit, nearly two hours after the collision. The record also reveals that Guy drove his car in a dangerous manner. Specifically, the

evidence demonstrates that Guy's vehicle veered off the road, onto the berm, back across the center line, and then struck the Pontiac head-on. Finally, the State's accident reconstruction expert estimated that Guy was traveling between three and sixteen miles-per-hour over the speed limit when the collision occurred. R. at 862–3, 869. Although Guy presented evidence, including the testimony of another accident reconstruction expert, that contradicted the State's evidence, the jury, as the trier of fact, was entitled to weigh the evidence and disregard this testimony. *See Everroad v. State*, 442 N.E.2d 994, 1003 (Ind.1982) ("It is for the trier of fact to reject an appellant's version of what happened, to determine all inferences arising from the evidence, and to decide which witnesses to believe"). Under the circumstances, we cannot conclude that there was no evidence that Guy acted recklessly or that the evidence is without conflict and only susceptible to an inference in his favor. The evidence was sufficient to support Guy's reckless homicide convictions.[9] *See Nichols*, 591 N.E.2d at 137–38 (sustaining conviction for reckless homicide where evidence demonstrated that defendant was intoxicated and had crossed center line for extended period of time). As a result, the trial court did not err in denying his motion for a directed verdict on the reckless homicide charges.

### B. Evidence of Intoxication

■ Next, we address Guy's contention that the trial court erred by denying his motion for a directed verdict on the remaining charges on the ground that the State failed to present prima facie evidence of Guy's intoxication. Initially, we note that the State presented evidence that Guy's blood serum level shortly after the collision was .238%, which corresponds to a whole blood alcohol content of .199%. R. at 1012. This evidence alone is sufficient to support Guy's convictions for operating a vehicle while intoxicated and/or with at least a .10% blood alcohol content resulting in death and operating a vehicle while intoxicated and/or with at least a .10% blood alcohol content resulting in serious bodily injury.

Additionally, the State presented sufficient evidence to support Guy's conviction for operating a vehicle while intoxicated as a class D felony. IND.CODE § 9–13–2–86 defines "intoxicated" as "under the influence of alcohol ... so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to an extent that endangers a person." Pursuant to IND. CODE § 9–13–2–131, prima facie evidence of intoxication includes evidence that at the time of the alleged violation there was at least ten-hundredths percent by weight of alcohol in the person's blood.

Here, the record reveals that Guy had consumed as many as twelve beers prior to driving to his wife's residence, that he had open beer cans in his vehicle and that his BAC level almost two hours after the collision was approximately .199%. Furthermore, the record reveals that after consuming the alcohol Guy drove his vehicle off the road and then crossed the center line of the road, striking the on-coming Pontiac. In addition, several witnesses at the collision site testified that Guy smelled of alcoholic beverages, that his speech was slurred and that he was angry, loud and uncooperative. One witness even testified that Guy yelled, "I fucked up, I am drunk." R. at 460. Based on this evi-

---

**9.** In support of his argument, Guy cites to *DeVaney v. State*, 259 Ind. 483, 288 N.E.2d 732 (1972), in which our supreme court held that the State failed to establish reckless homicide based solely on the defendant's intoxication at the time of the accident and the fact that he once crossed the center line of the road. In *DeVaney*, however, there were no witnesses to the accident and the accident reconstruction evidence only demonstrated that the accident may have occurred near the outside edge of the decedent's lane. *Id.* 288 N.E.2d at 736. As a result, the court concluded that such an occurrence could have been completely accidental. *Id.* at 738; *see also Nichols*, 591 N.E.2d at 137–38(distinguishing *DeVaney* on these grounds). Here, in contrast, the State presented eyewitness testimony that Guy veered off the road, crossed the center line and then struck the Pontiac head-on. In addition, as previously mentioned, the State's accident reconstruction expert estimated that Guy was driving between three and sixteen miles-per-hour over the speed limit at the time of the collision. Finally, as we will discuss, the State presented substantial evidence that Guy was severely intoxicated at the time of the crash. As a result, we do not find *DeVaney* dispositive.

dence, the jury could have reasonably inferred that Guy's consumption of alcohol impaired his ability to control his car and caused the collision with the Pontiac. *See Jellison v. State*, 656 N.E.2d 532, 535 (Ind. Ct.App.1995) (evidence that defendant consumed eight beers and two mixed drinks, failed to yield right-of-way, smelled of alcohol and acted aggressively supported finding that he was intoxicated). Therefore, the trial court did not err in denying Guy's motion for a directed verdict.

Judgment affirmed.

SHARPNACK and ROBERTSON, JJ., concur.