Lanny D. ABNEY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0307–CR–380.

Court of Appeals of Indiana.

June 30, 2004.

John F. Crawford, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

In this interlocutory appeal, Lanny Abney appeals the trial court's denial of his motion to suppress blood alcohol test results. Abney raises one issue, which we restate as whether the trial court erred by denying Abney's motion to suppress his blood alcohol test results because Abney's blood was drawn after the police had invoked the implied consent statute and Abney had refused to consent to the blood draw. We affirm.

The relevant facts follow. On July 9, 1999, shortly before 3:00 a.m., Jon Heffernan was riding a bicycle on Rockville Road and was struck by a car and killed. Marion County Sheriff deputies responded to the scene, they found Heffernan's body in the center of the road, his severed foot on another part of the road, and bicycle parts scattered on the road.

Around 3:15 a.m., Danville Police Officers Dwight Simmons and James Anderson saw Abney driving down a street in Danville and saw that his car had extensive front-end damage. The officers saw that the windshield of Abney's car was shattered, the hood and the top were caved in, the airbag had been deployed, and Abney had to lean his head out the window to

see to drive. Officer Anderson drove up behind Abney and activated his emergency lights. Abney sped away and drove for almost one mile before he stopped his car. During this time, Abney crossed the centerline and drove on the wrong side of the road. When Abney got out of his car, he was unsteady on his feet, lurched toward Officer Anderson, and said that he had hit something. Blood, hair, and skin were on the front of Abney's car. The officers noted that Abney smelled of alcohol, had glassy, bloodshot eyes, had slurred speech, and had difficulty standing. Officer Simmons administered four field sobriety tests to Abney, each of which he failed. Officer Simmons read Indiana's implied consent law to Abney, and Abney initially agreed to submit to a chemical blood test.

Officer Simmons then transported Abney to Hendricks County Hospital for a chemical blood test, but upon arriving at the hospital, Abney refused to submit to the blood test. Thereafter, Marion County Sheriff's Deputy William Atkinson went to the hospital and read the implied consent law to Abney. While Deputy Atkinson was talking to Abney, he noted that Abney had the smell of alcohol on his breath, bloodshot eyes, and slurred speech. Deputy Atkinson requested that Abney submit to a chemical test, told Abney that he needed for Abney to have the blood draw because the police were investigating a fatality, and asked Abney if he was going to cooperate with the hospital staff. Deputy Atkinson filled out a form, which was provided by the hospital, to request that the hospital staff take a sample of Abney's blood.[1] The form attested that: (1) Deputy Atkinson had probable cause to believe that Abney had violated a statutory provision;[2] (2) Abney was transported to the hospital; (3) Abney was involved in a motor vehicle accident that resulted in serious bodily injury or death of another; and (4) the accident that resulted in the death occurred no more than three hours before the sample was requested. The hospital staff performed the blood test, and the test results showed that Abney had a blood alcohol content of 0.21 percent.

The State charged Abney with: (1) operating a vehicle while intoxicated causing death, a class C felony,[3] which was enhanced to a class B felony because Abney had a prior unrelated operating while intoxicated conviction within five years from this charged offense; (2) operating a vehicle with 0.10% or more of alcohol by weight in grams in one hundred milliliters of his blood causing death, a class C felony,[4] which was enhanced to a class B felo-

1. During the suppression hearing, there was conflicting testimony as to whether Abney consented to the blood draw at the hospital. Deputy Atkinson testified that Abney consented to the test while Officer Simmons testified that Abney refused the test. However, on appeal, the parties both state that the blood test was performed without Abney's consent. Thus, for purposes of this appeal, we will assume that Abney did not consent to submit to the chemical blood test.

2. The form stated that there was probable cause to believe that the person from whom the blood sample was to be obtained had violated Ind.Code § 9–11–9. This article, Ind.Code § 9–11, relating to operation of a vehicle while intoxicated, was repealed by Pub.L. No. 2–1991, § 109 and is now recodified under Ind.Code § 9–30. There was not a chapter nine in the previous article eleven; however, that is of no moment because chapter eleven related to operating a vehicle while intoxicated and, more importantly and as Abney concedes, the officers here had probable cause to believe that Abney was operating his vehicle while intoxicated.

3. Ind.Code § 9–30–5–5(a) (1998) (subsequently amended by Pub.L. No. 1–2000, § 9; Pub.L. No. 120–2000, § 1; Pub.L. No. 175–2001, § 9).

4. *Id.*

ny because Abney had a prior unrelated operating while intoxicated conviction within five years from this charged offense; and (3) leaving the scene of an accident resulting in death, a class C felony.[5] A jury found Abney guilty of the three charges as class C felonies, and Abney pleaded guilty to the class B felony enhancements. The trial court sentenced Abney to an aggregate term of twenty years in the Indiana Department of Correction, with five years suspended.

Abney appealed, his convictions were overturned due to an erroneous instruction, and the case was remanded for retrial. *See Abney v. State,* 766 N.E.2d 1175 (Ind.2002). Prior to his retrial, Abney filed a motion to suppress the blood test evidence. The trial court held a hearing and denied Abney's motion. Upon Abney's request, the trial court certified the order for interlocutory appeal. Thereafter, we accepted jurisdiction of the interlocutory appeal pursuant to Ind. Appellate Rule 14(B).

█ The sole issue is whether the trial court erred by denying Abney's motion to suppress his blood alcohol test results because Abney's blood was drawn after the police had invoked the implied consent statute and Abney had refused to consent to the blood draw. We review the trial court's ruling on a motion to suppress in a manner similar to other sufficiency questions. *Edwards v. State,* 759 N.E.2d 626, 630 (Ind.2001). We affirm if substantial evidence of probative value supports the trial court's decision. *Id.* We may neither reweigh the evidence nor assess the credibility of the witnesses. *Id.* In addition, we consider the evidence in the light most favorable to the trial court's decision. *Id.;* see also *Crabtree v. State,* 762 N.E.2d 217, 219–220 (Ind.Ct.App.2002) (discussing a

conflict between the standard announced in *Edwards* and the standard announced in other appellate court cases, which require the appellate court to also consider uncontested evidence contrary to the trial court's decision).

█ Abney argues that the taking of his blood without his consent violated his constitutional rights against unreasonable search and seizure under the Fourth Amendment to the United States Constitution. The Fourth Amendment protects persons from unreasonable search and seizure, and this protection has been extended to the states through the Fourteenth Amendment. *Sweeney v. State,* 704 N.E.2d 86, 106–107 (Ind.1998), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2393, 144 L.Ed.2d 793 (1999). The drawing of blood for the purpose of administering a compulsory blood test is a search. *Duncan v. State,* 799 N.E.2d 538, 542 (Ind.Ct.App. 2003) (citing *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). As a general rule, the Fourth Amendment prohibits a warrantless search. *Sweeney,* 704 N.E.2d at 107. When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Id.* Probable cause and exigent circumstances are recognized exceptions to the warrant requirement. *Id.* We have previously held the dissipation of alcohol in the blood to be an exigent circumstance. *State v. Straub,* 749 N.E.2d 593, 600 (Ind. Ct.App.2001). However, absent an auto accident, the dissipation of alcohol in the blood does not alone create an exigent circumstance. *Justice v. State,* 552 N.E.2d 844, 847 (Ind.Ct.App.1990).

█ The United States Supreme Court has held that a nonconsensual blood

─────────

**5.** Ind.Code § 9–26–1–8(a)(2) (1998).

draw does not violate the Fourth Amendment if: (1) there is probable cause to believe that the person has operated a vehicle while intoxicated; (2) the dissipation of alcohol in the blood creates exigent circumstances under which there is no time to secure a search warrant; (3) the test chosen to measure the person's blood alcohol concentration is a reasonable one; and (4) the test is performed in a reasonable manner. *Schmerber*, 384 U.S. at 768–772, 86 S.Ct. at 1834–1836; *see also Duncan*, 799 N.E.2d at 542. However, these standards in *Schmerber* are the outer limits of what constitutes acceptable police conduct in taking blood samples from unwilling people, and the states are free to further limit police conduct within the confines of *Schmerber*. *Brown v. State*, 774 N.E.2d 1001, 1005 (Ind.Ct.App.2002), *reh'g denied, trans. denied.* Indiana's implied consent laws define acceptable police behavior within the constitutional limits set forth in *Schmerber*. *Justice*, 552 N.E.2d at 848. Indiana's implied consent laws seek to keep Indiana highways safe and protect the public by removing the threat posed by the presence of drunk drivers on the highways. *Id.*

Abney concedes that the officers had probable cause to believe that he had been operating his vehicle while intoxicated but argues that the trial court erred by denying his motion to suppress his blood tests results because he refused to consent to the blood draw offered to him under the implied consent laws. Abney argues that the implied consent laws do not allow the police to obtain a warrantless blood draw after a person refuses to consent to a chemical test even if the police have probable cause because the only consequences for refusing to consent to submit to a chemical test are civil sanctions. The State argues that the refusal of consent under the implied consent statutes and the resulting penalties for refusal do not preclude police from gathering a blood sample by a different exception to the warrant requirement other than consent. The State also argues that the blood draw was proper under Ind.Code § 9–30–6–6(g) because the officers had probable cause to believe that Abney recently operated a vehicle while intoxicated and was involved in an accident resulting in serious bodily injury or death.

■■■ This matter requires us to interpret the implied consent statutes, and specifically, to address the application of Indiana's implied consent statutes, Ind. Code §§ 9–30–6 and 9–30–7, to this case. The primary goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *State v. Dugan*, 793 N.E.2d 1034, 1036 (Ind.2003). The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute. *Hendrix v. State*, 759 N.E.2d 1045, 1047 (Ind.2001). It is just as important to recognize what the statute does not say as it is to recognize what it does say. *Dugan*, 793 N.E.2d at 1036. We are required to determine and apply the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572, 575 (Ind.2001). In so doing, we consider the objects and purposes of the statute, as well as the effects and consequences of such interpretation. *Id.*

■■■ The implied consent statutes are aimed at providing law enforcement officers with implied consent for performing chemical tests [6] on drivers who are either

---

**6.** A chemical test "means an analysis of a person's blood, breath, urine, or other bodily

thought to be intoxicated or who have been involved in an accident involving a fatality or serious bodily injury. *Brown v. State*, 744 N.E.2d 989, 993 (Ind.Ct.App.2001); *see also* Ind.Code §§ 9–30–6–2 (1998); 9–30–7–3 (1998) (subsequently amended by Pub.L. No. 275–2001, § 3). Chapter six of the implied consent statute, Ind.Code § 9–30–6, involves implied consent where the arresting officer has probable cause to believe that a person has operated a vehicle while intoxicated. I.C. § 9–30–6–2. Chapter seven of the implied consent statute, Ind.Code § 9–30–7, involves implied consent in accidents where the arresting officer has reason to believe that a person operated a vehicle that was involved in a fatal accident or an accident involving serious bodily injury. I.C. § 9–30–7–3. Under chapters six and seven of the implied consent statutes, a driver impliedly consents to submit to a chemical test and faces penalties, such as suspension of a driver's license, if he refuses to submit to a test. Ind.Code §§ 9–30–6–1 (1998), 9–30–6–7 (1998), 9–30–7–2 (1998) (subsequently amended by Pub.L. No. 275–2001, § 2), 9–30–7–5 (1998) (subsequently amended by Pub.L. No. 275–2001, § 4).

Ind.Code § 9–30–6–2 provides:

> (a) A law enforcement officer who has probable cause to believe that a person has committed an offense under this chapter, IC 9–30–5 [operating a vehicle while intoxicated], or IC 9–30–9, or a violation under IC 9–30–15 shall offer the person the opportunity to submit to a chemical test.
>
> (b) A law enforcement officer:

> (1) is not required to offer a chemical test to an unconscious person; and
>
> (2) may offer a person more than one (1) chemical test under this chapter.
>
> (c) A test administered under this chapter must be administered within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense under IC 9–30–5 or a violation under IC 9–30–15.
>
> (d) A person must submit to each chemical test offered by a law enforcement officer in order to comply with the implied consent provisions of this chapter.

Failure to submit to an offered chemical test under chapter six results in suspension of the person's driver's license. I.C. § 9–30–6–7.

At the time of Abney's alleged crimes, Ind.Code § 9–30–7–3 provided:

> (a) A law enforcement officer may offer a chemical test to any person who the officer has reason to believe operated a vehicle that was involved in a fatal accident or an accident involving serious bodily injury.
>
> (b) A law enforcement officer may offer a person more than one (1) chemical test under this section. However, all chemical tests must be administered within three (3) hours after the fatal accident or the accident involving serious bodily injury.
>
> (c) It is not necessary for a law enforcement officer to offer a chemical test to an unconscious person.[7]

Failure to submit to an offered chemical test under chapter seven results in a class

---

substance for the determination of the presence of alcohol, a controlled substance, or a drug." Ind.Code § 9–13–2–22 (1998).

**7.** The changes that Pub.L. No. 275–2001, § 3 made to Ind.Code § 9–30–7–3 include: (1)

substituting "shall" for "may" in subsection (a); and (2) allowing the officer to offer "a portable breath test or a chemical test" in certain situations.

C infraction and may result in the suspension of the person's driver's license for up to one year. I.C. § 9–30–7–5.

Furthermore, Ind.Code § 9–30–7–4(b) (1998) provides that "[Ind.Code § ] 9–30–6–6 applies if a physician ... obtains a blood ... sample for a person at the request of a law enforcement officer who acts under this section[.]" Indiana Code § 9–30–6–6 provides, in part:

\* \* \* \* \*

(g) A physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician shall obtain a blood, urine, or other bodily substance sample if the following exist:

(1) A law enforcement officer requests that the sample be obtained.

(2) The law enforcement officer has certified in writing the following:

(A) That the officer has probable cause to believe the person from whom the sample is to be obtained has violated IC 9–30–5.

(B) That the person from whom the sample is to be obtained has been transported to a hospital or other medical facility.

(C) That the person from whom the sample is to be obtained has been involved in a motor vehicle accident that resulted in the serious bodily injury or death of another.

(D) That the accident that caused the serious bodily injury or death of another occurred not more than three (3) hours before the time the sample is requested.

(3) Not more than the use of reasonable force is necessary to obtain the sample.

(h) If the person:

(1) from whom the bodily substance sample is to be obtained under this section does not consent; and

(2) resists the taking of a sample;

the law enforcement officer may use reasonable force to assist an individual, who must be authorized under this section to obtain a sample, in the taking of the sample.

\* \* \* \* \*

Ind.Code § 9–30–6–6(g),(h). Thus, some of the provisions of chapters six and seven of the implied consent statutes come together under Ind.Code § 9–30–6–6 in a situation where a police officer has probable cause to believe that a person was operating a vehicle while intoxicated (chapter six) and where the person has been involved in an accident involving serious bodily injury or death (chapter seven). Ind.Code §§ 9–30–6–2, 9–30–6–6(g), 9–30–7–3, 9–30–7–4(b). *But see, Brown,* 744 N.E.2d at 994 (concluding that while chapters six and seven are both aimed at achieving the same end result, these chapters are separate and should not be read together to require an officer to have probable cause of intoxication under chapter six before he could ask a driver to submit to a chemical test under chapter seven because chapter seven did not require a showing of probable cause of intoxication).

The parties disagree as to whether Ind. Code § 9–30–6–6(g) applies to the facts of this case. The State argues that this statute codifies the holdings in *Schmerber* and *Justice* and "allows a law enforcement officer to obtain a blood sample without a warrant where, consistent with *Schmerber,* the officer has probable cause to believe the defendant recently operated a motor vehicle while intoxicated and, consistent with *Justice,* the defendant was involved in an accident resulting in serious [bodily] injury or death." Appellee's Brief at 8. Abney argues that Ind.Code § 9–30–6–6(g) only applies when a physician refuses to draw a blood sample and argues that be-

cause those facts are not present here, the statute does not apply.

■ We acknowledge that we have held that "I.C. 9–30–6–6(g) was intended to assist law enforcement officers in obtaining evidence of intoxication by providing them with a mechanism to compel reluctant physicians to draw blood samples" and that Ind.Code § 9–30–6–6(g) only applies when a physician refuses to draw a blood sample. *Guy v. State*, 678 N.E.2d 1130, 1134 (Ind.Ct.App.1997) (citing *Spriggs v. State*, 671 N.E.2d 470, 472 (Ind. Ct.App.1996); *State v. Robbins*, 549 N.E.2d 1107, 1109–1110 (Ind.Ct.App. 1990)). However, when doing so, we also held that the requirements of Ind.Code § 9–30–6–6(g) were a tool to acquire evidence of blood alcohol content rather than a device to exclude evidence. *Guy*, 678 N.E.2d at 1134 (citing *Spriggs*, 671 N.E.2d at 472; *Robbins*, 549 N.E.2d at 1109–1110). Furthermore, when discussing whether a nonconsensual, warrantless blood draw complied with the Fourth Amendment, we have noted that subsection (g) allows the taking of a blood sample without the driver's consent if the provisions of the subsection are met (i.e., a police officer certifies in writing that there is probable cause the driver was operating a vehicle while intoxicated, the driver has been transported to a hospital, the driver was involved in an accident resulting in serious bodily injury or death, and the accident occurred not more than three hours before the time the sample is requested). *Hannoy v. State*, 789 N.E.2d 977, 986 n. 3 (Ind.Ct.App.2003),

*aff'd on reh'g* 793 N.E.2d 1109 (Ind.Ct. App.2003), *trans. denied; Justice*, 552 N.E.2d at 848 n. 5. Furthermore, Ind.Code § 9–30–7–4(b) specifically provides that "[Ind.Code § ] 9–30–6–6 applies if a physician ... obtains a blood ... sample for a person at the request of a law enforcement officer who acts under this section." Moreover, Ind.Code § 9–30–6–6(h) allows a police officer to use reasonable force to assist in obtaining a blood sample where a person has refused consent. We interpret Ind.Code § 9–30–6–6(g) to be a means of acquiring a person's blood when a police officer has probable cause to believe the driver was operating a vehicle while intoxicated and the driver was involved in an accident resulting in serious bodily injury or death. Because we have those facts in this matter, we conclude that Ind.Code § 9–30–6–6(g) is applicable to this case. *See Hannoy*, 789 N.E.2d at 986, n. 3; *Justice*, 552 N.E.2d at 848 n. 5; Ind.Code § 9–30–7–4(b). Thus, we agree with our prior holding that Ind.Code § 9–30–6–6(g) is a means of gathering evidence of a person's blood alcohol content but, to the extent that we have held that subsection (g) is only applicable when a physician refuses to draw blood, we disagree with those cases. *See Guy*, 678 N.E.2d at 1134; *Spriggs*, 671 N.E.2d at 472; *Robbins*, 549 N.E.2d at 1109–1110.[8]

Because we conclude that Ind.Code § 9–30–6–6(g) is applicable to the facts of this matter, we must review whether Abney's blood draw complied with Ind.Code § 9–

---

**8.** We note that due to the specific requirements of Ind.Code § 9–30–6–6(g), this subsection will be applied in very limited circumstances, such as we have here, where the police have probable cause to believe that the driver was operating a vehicle while intoxicated and where that driver was involved in an accident resulting in serious bodily injury or death. Because of these limitations of subsection (g), it would not apply or could not be used as a means to gather evidence where a driver was merely involved in an accident resulting in serious bodily injury or death but where there was no probable cause to believe that he operated his vehicle while intoxicated. Moreover, subsection (g) would also not apply where there is probable cause that a driver operated his vehicle while intoxicated but was not involved in an accident resulting in serious bodily injury or death.

30–6–6(g). Ind.Code § 9–30–6–6(g) allows a police officer to request that hospital staff draw blood from a driver if the officer certifies in writing that: (1) the officer has probable cause to believe that the person from whom the sample is to be obtained was operating a vehicle while intoxicated; (2) the person from whom the sample is to be obtained has been transported to a hospital or other medical facility; (3) the person from whom the sample is to be obtained has been involved in a motor vehicle accident that resulted in the serious bodily injury or death of another; and (4) the accident that caused the serious bodily injury or death of another occurred not more than three hours before the time the sample is requested.

■ Here, around 3:00 a.m., the police found a dead bicyclist in the middle of the road shortly after he was struck by a car. Soon thereafter, the police saw Abney driving in a car that had extensive front-end damage and blood and tissue on the front of his car. The windshield was shattered, the hood and the top of the car were caved in, the airbag had been deployed, and Abney had to lean his head out the window to see to drive. When the police pulled up behind Abney and activated their red lights, Abney sped away, crossed the centerline, drove on the wrong side of the road, and drove for almost one mile before he stopped his car. When Abney got out of his car, he was unsteady on his feet, smelled of alcohol, had slurred speech and glassy, bloodshot eyes, and failed four field sobriety tests. Officer Simmons read the implied consent law to Abney, who initially agreed to submit to a chemical test, and Officer Simmons then transported Abney to Hendricks County Hospital for a blood test where Abney refused to consent. Deputy Atkinson then advised Abney of the implied consent laws by again reading his implied consent card as follows:

I have probable cause to believe that you have operated a vehicle while intoxicated. I must now offer you the opportunity to submit to a chemical test and inform you that your refusal to submit to a chemical test will result in a suspension of your driving privileges for one year. Will you now take a chemical test?

Appellant's Appendix at 120. Deputy Atkinson requested that Abney submit to a chemical test, told Abney that he needed to have the blood draw because the police were investigating a fatality, and asked if Abney was going to cooperate with the hospital staff. Thereafter, at 4:51 a.m., Deputy Atkinson filled out a form requesting that the hospital staff take a sample of Abney's blood, and the test results showed that Abney had a blood alcohol content of 0.21 percent.

Here, the provisions of Ind.Code § 9–30–6–6(g) were met when Deputy Atkinson requested the blood sample and attested that the following four subsections of the statute were met. First, Abney concedes that the officers had probable cause to believe that he was driving while intoxicated. Second, Officer Simmons transported Abney to the hospital after Abney initially agreed to submit to a chemical test in response to Officer Simmons's implied consent request. Third, Abney was involved in a motor vehicle accident that resulted in Heffernan's death. Finally, the accident that caused Heffernan's death occurred shortly before 3:00 a.m. and Deputy Atkinson requested the blood sample at 4:51 a.m.; thus, not more than three hours had passed between the accident causing Heffernan's death and the blood sample request. Accordingly, we conclude that the nonconsensual, warrantless blood draw from Abney was within the guidelines of the implied consent laws. As a result, we must conclude that the trial court did not

err by denying Abney's motion to suppress.[9]

■ We also disagree with Abney's argument that the implied consent laws do not allow police to obtain a blood draw after a person refuses to consent to submit to a chemical test even if the police have probable cause because the only consequences for refusing to consent to submit to a chemical test are civil sanctions. Under the implied consent laws, a driver consents to submit to a chemical test or, if he refuses to submit to the chemical test, he consents to suffer the sanctions for not submitting to the chemical test. Nothing in the implied consent statutes explicitly prohibits police from gathering evidence of a person's intoxication in a lawful manner other than by consent once a person refuses to consent to a chemical test. *See Dugan*, 793 N.E.2d at 1036 (noting that it is just as important to recognize what the statute does not say as it is to recognize what it does say). "We do not derive from the implied consent law a legislative intent to preclude a law enforcement officer gen-

erally from determining a driver's blood alcohol content[.]" *Brown*, 774 N.E.2d at 1007. In *Brown*, the defendant refused consent under the implied consent statutes, and the police then obtained a search warrant and drew the defendant's blood. *Id.* at 1003. On appeal, the defendant argued that once a driver refused to submit to a chemical test, the implied consent law precludes an officer from obtaining a search warrant to obtain a blood sample. *Id.* at 1004. We rejected that argument and held that the provisions of the implied consent law do not prevent an officer from obtaining a blood sample pursuant to a search warrant and to hold otherwise "would be to place allegedly drunken drivers in an exalted class of criminal defendants, protected by the law from every means of obtaining the most important evidence against them." *Id.* at 1007 (citation omitted). Like *Brown*, we conclude that the implied consent statutes do not prohibit police from obtaining a blood sample in a lawful manner once a driver refuses to consent to a chemical test. If we

9. In support of his argument that the trial court erred by denying his motion to suppress, Abney cites to *Hannoy* and *Justice*. These cases, however, are distinguishable because, unlike the facts of this case, those cases they did not have both probable cause for belief of the driver's intoxication and the driver's involvement in a fatal accident.

In *Hannoy*, a sheriff's deputy obtained the defendant's blood without a warrant, without probable cause, and without the defendant's consent. *Hannoy*, 789 N.E.2d at 981. The deputy did not advise the defendant of the implied consent laws or offer the defendant a chemical test and instead ordered hospital staff to perform a blood draw based merely upon the sheriff's department's policy of obtaining a blood sample of any driver involved in a motor vehicle accident resulting in serious bodily injury or death. *Id.* We held that the withdrawal of the defendant's blood was not obtained pursuant to the guidelines in the implied consent statutes and, thus, could not be justified as being drawn in accordance

with those statutes. *Id.* at 982–983, 989. Unlike the officer in *Hannoy*, here, the police had probable cause to believe that Abney was intoxicated. Further, although Deputy Atkinson testified that, at the time of Abney's crimes, the same sheriff's department policy that was disapproved of in *Hannoy* was operational in this case, here, Deputy Atkinson had probable cause to believe that Abney was driving while intoxicated and Abney's blood was obtained pursuant to the guidelines in the implied consent statutes.

In *Justice*, we held that the nonconsensual seizure of the defendant's blood was unlawful because the police violated the guidelines contained in the implied consent laws when obtaining the defendant's blood sample and that exigent circumstances did not apply because the defendant was not involved in an auto accident. *Justice*, 552 N.E.2d at 848. Here, the police complied with the guidelines contained in the implied consent laws, and Abney was involved in a fatal accident.

interpreted the implied consent statutes to hold that a person, who operates a vehicle while intoxicated and is involved in an accident resulting in death or serious bodily injury, could merely refuse to consent to a chemical test and only be faced with the sanction of losing his license and infraction and that his refusal precluded police from obtaining a blood sample by means of I.C. § 9–30–6–6(g), that interpretation would be an absurdity and would encourage drunk drivers involved in fatal accidents to deny consent in order to face minimal criminal and civil penalties rather than the class C felony intended by the legislature. *See Livingston,* 753 N.E.2d at 575 (holding that we are to apply the legislative intent underlying a statute and to construe the statute in such a way as to prevent absurdity); *Brown,* 774 N.E.2d at 1007.

In summary, the withdrawal of Abney's blood was obtained pursuant to the guidelines in the implied consent statutes, more specifically Ind.Code § 9–30–6–6(g). Therefore, the trial court did not err by denying Abney's motion to suppress his blood alcohol test results that were obtained after Abney had refused to submit to a chemical test under the implied consent statutes.

For the foregoing reasons, we affirm the trial court's denial of Abney's motion to suppress.

Affirmed.

DARDEN and ROBB, JJ., concur.