**Lanny D. ABNEY, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 49S04–0501–CR–29.

Supreme Court of Indiana.

Jan. 27, 2005.

---

John F. Crawford, Crawford & DeVane, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

### Facts and Procedural History

RUCKER, Justice.

On July 9, 1999, shortly before 3:00 a.m., deputies of the Marion County Sheriff's Department found the deceased body of Jon Heffernan lying in the middle of a roadway. A car had struck Heffernan and the bicycle he was riding. Shortly thereafter, Danville police officers James Anderson and Dwight Simmons saw Lanny Abney driving in a car that had extensive front-end damage. The windshield was shattered, the hood and top of the car were caved in, and the airbag had been deployed. Abney had to navigate the car by leaning his head out of the driver's side window. When the officers pulled behind Abney and activated their overhead lights, Abney sped away, crossed the centerline, drove on the wrong side of the road, and drove for about a mile before finally pulling into a driveway in a residential neighborhood. When Abney got out of the car, he was unsteady on his feet, he smelled of alcohol, his speech was slurred, and his eyes were glassy and bloodshot. After initial questioning, Abney admitted having hit something with his car, but said he did not know what it was. The officers observed what appeared to be blood, hair, and skin on the front of Abney's car.[1]

Officer Simmons arrested Abney and read to him Indiana's implied consent law. Abney agreed to submit to a chemical test and Officer Simmons then transported Ab-

---

1. DNA testing later confirmed that Abney's car had struck Heffernan.

ney to the Hendricks County Hospital for that purpose. Once there, Abney changed his mind and refused to submit to a blood test. Thereafter Marion County Sheriff's Deputy William Atkinson arrived at the hospital. He read Abney an implied consent advisement as follows:

I have probable cause to believe that you have operated a vehicle while intoxicated. I must now offer you the opportunity to submit to a chemical test and inform you that your refusal to submit to a chemical test will result in a suspension of your driving privileges for one year. Will you now take a chemical test?

Appellant's App. at 120. Deputy Atkinson added however that even if Abney did not consent, "we were going to have to take the blood due to the fact that we had a serious bodily injury or fatality crash." *Id.* at 121. Abney refused the offer telling Deputy Atkinson that if they took blood it would be "against his will." *Id.* at 135. Deputy Atkinson then filled out a form that was provided by the hospital for the purpose of requesting hospital staff to take a sample of Abney's blood. The form attested that: (1) Deputy Atkinson had probable cause to believe that Abney had violated a statutory provision; (2) Abney was transported to the hospital; (3) Abney was involved in a motor vehicle accident that resulted in serious bodily injury or death of another; and (4) the accident that resulted in death occurred no more than three hours before the sample was requested. The hospital staff took a blood sample and performed an analysis that showed Abney had a blood alcohol content of .21%.

The State charged Abney with: (1) operating a vehicle while intoxicated causing death, a Class C felony, which was enhanced to a Class B felony because of a prior unrelated conviction of operating

while intoxicated within five years from the charged offense; (2) operating a vehicle with .10% or more blood alcohol content causing death, a Class C felony, which was also enhanced to a Class B felony; and (3) leaving the scene of an accident resulting in death, a Class C felony. After a trial by jury Abney was found guilty of the charges as Class C felonies. He thereafter pleaded guilty to the Class B felony enhancements. The trial court sentenced Abney to an aggregate term of twenty years in prison with five years suspended. Abney appealed and the Court of Appeals reversed his convictions because of an erroneous jury instruction. The Court remanded the cause for a new trial. *See Abney v. State*, 758 N.E.2d 72 (Ind.Ct.App. 2001). We granted the State's petition to transfer in order to clarify certain points of law. In the end we agreed with the Court of Appeals and also reversed Abney's conviction and remanded the cause for a new trial. *See Abney v. State*, 766 N.E.2d 1175 (Ind.2002).

Prior to retrial, Abney filed a motion to suppress the results of the blood test, which the trial court denied after a hearing. Upon Abney's request the trial court certified its order for interlocutory appeal, and the Court of Appeals accepted jurisdiction. On review the Court of Appeals affirmed the judgment of the trial court. *See Abney v. State*, 811 N.E.2d 415 (Ind. Ct.App.2004). In so doing the Court of Appeals determined that Indiana Code § 9–30–6–6(g) allowed for the warrantless non-consensual taking of blood samples in cases involving serious bodily injury or death, regardless of whether a physician was reluctant to take the sample. *Id.* at 422. Abney petitioned this Court for transfer contending among other things that the Court of Appeals' opinion in this case conflicts with other Court of Appeals opinions, namely: *Guy v. State*, 678 N.E.2d 1130 (Ind.Ct.App.1997); *Spriggs v.*

*State,* 671 N.E.2d 470 (Ind.Ct.App.1996); and *State v. Robbins,* 549 N.E.2d 1107 (Ind.Ct.App.1990).

### Discussion

■ Indiana Code § 9–30–6–6(g) provides:

A physician or a person trained in obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician shall obtain a blood, urine, or other bodily substance sample if the following exist:

(1) A law enforcement officer requests that the sample be obtained.

(2) The law enforcement officer has certified in writing the following:

   (A) That the officer has probable cause to believe the person from whom the sample is to be obtained has violated IC 9–30–5.

   (B) That the person from whom the sample is to be obtained has been transported to a hospital or other medical facility.

   (C) That the person from whom the sample is to be obtained has been involved in a motor vehicle accident that resulted in the serious bodily injury or death of another.

   (D) That the accident that caused the serious bodily injury or death of another occurred not more than three (3) hours before the time the sample is requested.

(3) Not more than the use of reasonable force is necessary to obtain the sample.

I.C. 9–30–6–6(g). In *Robbins* the defendant was charged with several offenses related to the operation of a motor vehicle while intoxicated after he was involved in a one-car collision. 549 N.E.2d at 1108. He filed a motion to suppress the results of a serum blood alcohol test performed by a hospital treating physician. At the hearing on the motion the defendant argued that the State did not comply with subsection (g) of Indiana Code § 9–11–4–6 (predecessor to Indiana Code § 9–30–6–6(g)) in requesting that a test be performed. In reversing the judgment of the trial court, the Court of Appeals determined that subsection (g) was not applicable in that case. The court continued:

Prior to the enactment of subsection (g), a reluctant physician, or member of hospital staff, could avoid turning such evidence of intoxication over to the State by refusing to draw a blood sample or conduct a chemical test. Subsection (g) permits the State to require a reluctant physician to draw a blood sample, when certain conditions are met.

*Id.* at 1110 (citation and footnotes omitted).

Subsequent Court of Appeals opinions cited *Robbins* for the proposition that subsection (g) is only applicable when a physician refuses to draw blood. *See, e.g., Guy,* 678 N.E.2d at 1134 ("I.C. § 9–30–6–6(g) was intended to assist law enforcement officers in obtaining evidence of intoxication by providing them with a mechanism to compel reluctant physicians to draw blood samples ..."); *Spriggs,* 671 N.E.2d at 472 ("subsection (g) applies only when a physician refuses to draw a blood sample."); *Glasscock v. State,* 576 N.E.2d 600, 604 (Ind.Ct.App.1991) ("Subsection (g) does not apply when the physician is not reluctant to draw the blood sample.") *trans. denied.* Acknowledging *Robbins, Spriggs,* and *Guy,* the Court of Appeals in this case said, "to the extent that we have held subsection (g) is only applicable when a physician refuses to draw blood, we disagree with those cases." *Abney,* 811 N.E.2d at 422. Abney complains that the physician here did not refuse to draw a blood sample. Thus, according to Abney, subsection (g) did not apply and the Court

of Appeals erred in not following *Robbins* and its progeny.

■ Indiana's implied consent statutes provide the State with a mechanism necessary to obtain evidence of a driver's intoxication in order to keep Indiana highways safe by removing the threat posed by the presence of drunk drivers. *Brown v. State*, 774 N.E.2d 1001, 1005 (Ind.Ct.App. 2002). As the Court of Appeals has observed, Indiana Code § 9–30–6–6(g) is designed as a tool to acquire evidence of blood alcohol content rather than as a device to exclude evidence. *Guy*, 678 N.E.2d at 1134; *Spriggs*, 671 N.E.2d at 472. In our view, limiting Indiana Code § 9–30–6–6(g) to those instances in which a physician refuses to draw blood is inconsistent with the intent of the implied consent statutes. Contrary language in *Robbins, Glasscock, Spriggs*, and *Guy* is hereby disapproved. We therefore grant Abney's petition to transfer and adopt the opinion of the Court of Appeals in this case.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.