**Lanny ABNEY, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0603–CR–267.

Court of Appeals of Indiana.

Dec. 13, 2006.

Ann M. Sutton, Julie Ann Slaughter, Marion County Public Defender Agency, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

Following a jury trial, Lanny Abney appeals his conviction for operating a vehicle while intoxicated causing death as a Class

B felony.[1] He raises one issue, which we restate as: whether the State presented sufficient evidence to establish that Abney caused the death of the bicyclist that he hit with his automobile, which he was operating while intoxicated.

We affirm.

## FACTS AND PROCEDURAL HISTORY

This is Abney's third appeal to this Court, and, so far, his case has made its way to our Supreme Court twice. *See Abney v. State*, 758 N.E.2d 72 (Ind.Ct.App. 2001), *trans. granted and opinion vacated by Abney v. State*, 766 N.E.2d 1175 (Ind. 2002); *on subsequent appeal Abney v. State*, 811 N.E.2d 415 (Ind.Ct.App.2004), *opinion adopted by Abney v. State*, 821 N.E.2d 375 (Ind.2005). All of these cases arise from a July 1999 collision, in which Abney's motor vehicle struck a bicyclist. Our Supreme Court described the circumstances of the incident:

> On July 9, 1999, shortly before 3:00 a.m., deputies of the Marion County Sheriff's Department found the deceased body of Jon Heffernan lying in the middle of a roadway. A car had struck Heffernan and the bicycle he was riding. Shortly thereafter, Danville police officers James Anderson and Dwight Simmons saw Lanny Abney driving in a car that had extensive front-end damage. The windshield was shattered, the hood and top of the car were caved in, and the airbag had been deployed. Abney had to navigate the car by leaning his head out of the driver's side window. When the officers pulled behind Abney and activated their overhead lights, Abney sped away, crossed the centerline, drove on the wrong side of the road, and drove for about a mile before finally pulling into a driveway in a residential neighborhood. When Abney got out of the car, he was unsteady on his feet, he smelled of alcohol, his speech was slurred, and his eyes were glassy and bloodshot. After initial questioning, Abney admitted having hit something with his car, but said he did not know what it was. The officers observed what appeared to be blood, hair, and skin on the front of Abney's car.

*Abney*, 821 N.E.2d at 376. A subsequent chemical blood test revealed that at 4:50 a.m. Abney had a blood alcohol content of .21%.

The State charged Abney with: (1) operating a vehicle while intoxicated causing death; (2) operating a vehicle with .10% or more blood alcohol content causing death; and (3) leaving the scene of an accident resulting in death, all Class C felonies. The State sought Class B felony enhancement on the first two counts because Abney had a prior operating while intoxicated conviction within five years of the charged offenses. Following a jury trial, Abney was convicted on all charges, and he pled guilty to the Class B felony enhancements. Abney appealed, and we reversed his convictions due to an erroneous causation instruction and remanded for new trial. *Abney*, 758 N.E.2d at 77. Our Supreme Court granted transfer and ultimately reached the same result. *Abney*, 766 N.E.2d at 1178.

Prior to retrial, Abney filed a motion to suppress the evidence of the blood alcohol test, and the trial court denied his motion. He appealed, and we affirmed the trial court's decision, and on transfer our Supreme Court adopted our opinion. *Abney*, 821 N.E.2d at 379; *Abney*, 811 N.E.2d at 425.

---

1.  *See* IC 9–30–5–5.

At Abney's second trial in February 2006, the State presented the testimony of a certified crash investigator and an expert accident reconstructionist. Both experts opined that as Abney drove his white Chevrolet Beretta on July 9, 1999, he struck and killed Heffernan, who was riding his red Cannondale bicycle home from work. The State also presented the testimony of a forensic pathologist that the damage to Abney's vehicle was consistent with Heffernan's injuries. The jury convicted Abney as charged. The trial court enhanced the conviction for operating a vehicle while intoxicated causing death to a Class B felony because of a prior operating a vehicle while intoxicated conviction within the last five years, and it sentenced Abney to twenty years in prison, with five years suspended.[2] Abney now appeals.

## DISCUSSION AND DECISION

■ Abney challenges the sufficiency of the evidence supporting his conviction for operating a vehicle while intoxicated causing death. In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and all reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Spaulding v. State*, 815 N.E.2d 1039, 1041 (Ind.Ct.App.2004).

■ At the time of Abney's conviction, IC 9–30–5–5(a) read:

A person who causes the death of another person when operating a motor vehicle:

(1) with at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood; or

. . . .

(3) while intoxicated;

commits a Class C felony.

A conviction for operating while intoxicated causing death requires proof that the defendant's operation of a motor vehicle while intoxicated was a "substantial cause," and not merely a "contributing cause" of the resulting death. *Spaulding*, 815 N.E.2d at 1041–42 (citing *Abney*, 766 N.E.2d at 1176). The well-settled rule is that the State must prove the defendant's conduct was the proximate cause of the victim's injury or death. *Abney*, 766 N.E.2d at 1177–78.

Here, Abney concedes that he was driving while intoxicated, his vehicle struck Heffernan on the night in question, and that he left the scene of an accident. His contention on appeal is that the State failed to present sufficient evidence to establish that he caused Heffernan's death. Abney's argument is that some other unidentified vehicle hit and killed Heffernan before Heffernan was thrown onto Abney's vehicle. After reviewing the record before us, we reject Abney's claim.

Initially, we note the absence of evidence to indicate that any other vehicles were in the subject location at the time of the accident. For that proposition, the State presented the testimony of several witnesses, one who encountered Heffernan before the accident and two who discovered his body shortly after it had been struck.

First, the jury heard from Jeffrey Toler, a United Parcel Service ("UPS") employee

2. The trial court merged the conviction on Count II, operating a vehicle with a BAC of more than .10% causing death, into Count I. *Tr.* at 760. The trial court reduced the Count III Class C felony conviction for failure to stop at an accident resulting in death to a lesser included B misdemeanor conviction, which Abney does not appeal.

who was driving his UPS truck through the area near the time in question. Toler stated that just before 3:00 a.m. he exited I–465 at Rockville Road and proceeded to head west on Rockville Road. He explained that he saw a flickering red light in the center lane and upon passing it, realized that it was a bicyclist, later determined to be Heffernan.[3] Toler testified that he saw no other vehicles in the area until he reached Raceway Road, where he saw a semi tractor-trailer truck headed east on Rockville Road. Next, a man named Jeff Ellis, a Federal Express employee, testified that just after 3:00 a.m. he was driving home from work, heading west on Rockville Road, when he saw something lying in the road, which he realized was a body as he neared it. Ellis stopped his truck to protect the body. Ellis stated that moments later a pickup truck pulled up to the scene. In that truck were Susan Murphy, a nurse, and her boyfriend. Murphy testified that at or just after 3:00 a.m., as she was riding in the pickup truck with her boyfriend westbound on Rockville Road, they encountered Heffernan's body in the road. Murphy stated that she personally jumped in front of an oncoming (eastbound) semi tractor-trailer truck to stop it from running over the amputated foot that she noticed in the eastbound lane of Rockville Road. None of those witnesses described any other vehicular traffic passing through the area.

As for the circumstances of the accident and how it occurred, the State presented the testimony of Sergeant Eric Hutte, a fatality certified accident investigator with the reserve division of the Marion County Sheriff's Department. Hutte responded to the scene at approximately 3:00 a.m., and he described the extensive damage to Abney's vehicle: the roof was caved in, the windshield was smashed to the car's dash-board, the hood and grill were damaged, and there was blood and flesh on the vehicle. There was no damage to the underside of the vehicle that would suggest Abney ran over Heffernan or his bicycle. Hutte testified that in his opinion Abney's vehicle was the first and only vehicle to strike Heffernan, and he repeatedly stated that there was no evidence that there were any other vehicles involved. *Tr.* 207, 208, 210, 214.

Sergeant Douglas Heustis of the Marion County Sheriff's Department, a supervisor with the Department's crash investigation section, a certified accident reconstructionist, and a member of the fatal alcohol crash team, also testified for the State. In Heustis's opinion, Abney was traveling approximately 57 m.p.h. and struck Heffernan's bike from behind. Heustis explained that because Heffernan's leg initially was pinned between his bike and Abney's front bumper, Heffernan's body was slammed on the vehicle's hood, and then its roof, before being propelled forward and coming to rest approximately eighty-two yards away on Rockville Road. Heustis estimated that the entire accident took less than a second. Heustis's testimony did not include any suggestion that another vehicle struck Heffernan before Abney's vehicle did so.

Next, the State presented the testimony of Dr. John Pless, who in 1999 was a Professor of Pathology at the Indiana University School of Medicine and the Director of the Division of Forensic Pathology. Dr. Pless determined that Heffernan's cause of death was a fractured neck, which would be an injury consistent with a rear strike to a bicyclist by a vehicle. He also stated that he believed that Heffernan's broken neck injury would have occurred "on initial impact with a car." *Id.* at 462. Dr. Pless further opined that

---

**3.** Toler noted that Heffernan's bicycle dis-    played a bright headlight as well.

Heffernan's injuries did not suggest that his body was hit by more than one car. *Id.* at 470.

Despite this evidence, Abney argues that someone else, not he, caused Heffernan's death, and therefore we should reverse his conviction. His argument is that another unidentified vehicle hit Heffernan first, which caused Heffernan, allegedly already deceased, to be thrown on top of Abney's hood, windshield, and roof. In support of his argument, Abney relies upon the testimony of his expert accident reconstructionist, Stuart Nightenhelser, a consulting engineer with a background in physics and mathematics.

Nightenhelser testified that, contrary to the State's theory, the physical evidence was not consistent with a rider being positioned on a bicycle and being struck from behind. Rather, he concluded that the evidence was more consistent with "something just being kind of wadded up and thrown at the hood, you know, from slightly above rather than just proceeding back horizontally." *Id.* at 528–29. Although in Nightenhelser's opinion there was not adequate physical evidence to reconstruct exactly how the accident occurred, he believed that the evidence was "not inconsistent" with the idea that another vehicle struck Heffernan from behind, elevated him into the air, and he landed on the hood of Abney's Beretta. *Id.* at 549. Nightenhelser conceded, however, that he could not present a scenario or otherwise specifically explain how the accident could have happened in that manner. *Id.* at 595–96.

In the end, Abney's claim, and even the opinion of his own expert, relies on considerable speculation. We decline to reweigh the evidence presented to the jury, which primarily consists of evidence that Abney was the substantial, and indeed the only, cause of Heffernan's death. The evidence was sufficient for the jury to determine beyond a reasonable doubt that Abney's operation of a motor vehicle while intoxicated caused Heffernan's death.

Affirmed.

SHARPNACK, J., and MATHIAS, J., concur.