## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 14 2016, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jacqueline Williams,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 14, 2016

Court of Appeals Case No.
49A05-1508-CR-1236

Appeal from the Marion Superior Court

The Honorable Mark Stoner, Judge

The Honorable Jeffrey L. Marchal, Magistrate

Trial Court Cause No.
49G06-1408-CM-39471

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Jaqueline F. Williams (Williams), appeals her convictions for operating a motor vehicle while intoxicated causing death, a Level 5 felony, Ind. Code § 9-30-5-5(a)(3) (2014); and driving while suspended, a Class A misdemeanor, I.C. § 9-24-19-2.

We affirm.

# ISSUE

Williams raises one issue on appeal, which we restate as follows: Whether the evidence was sufficient to sustain her convictions.

# FACTS AND PROCEDURAL HISTORY

On August 13, 2014, a witness was driving southbound on I-65 in Marion County, Indiana. The witness observed a small, dark-colored car in front of him veer off the road from the center lane to the left, strike the concrete barrier, ricochet across the road to the right, strike the metal guardrail, and then come to a stop. The witness stopped his vehicle in front of the wrecked car to check if anyone was injured. He initially observed no visible injuries to any of the occupants. A male passenger in the rear seat was unconscious, but he regained consciousness, exited the vehicle on his own, and sat on the guardrail. The witness observed the male passenger had a "piece of glass sticking out of his

face" and a "little bit of blood coming down." (Transcript pp. 23-24). The witness's wife and several other individuals called 911 to report the accident.

[5] At approximately 8:50 p.m., Officer Marlin Sechrist (Officer Sechrist) of the Indianapolis Metropolitan Police Department (IMPD) was driving northbound on I-65 to work when he noticed the accident on the other side of the highway. He turned around at the next exit and drove to the scene. Officer Sechrist radioed IMPD's control station to contact the Indiana State Police (ISP) because the accident occurred on the Interstate, which was ISP's jurisdiction. He ensured all of the occupants of the crashed vehicle were present, checked for serious injuries, and assessed the accident scene. Williams identified herself as the vehicle's driver. Another female occupant was identified as the front seat passenger. William Trotter (Trotter) was identified as the rear seat passenger. When Officer Sechrist spoke with Williams, he observed that her eyes were red and bloodshot, and her speech was slurred. He smelled the odor of alcoholic beverage coming from her breath and person.

[6] Shortly before 9:00 p.m., ISP Trooper Derek Miller (Trooper Miller) arrived at the scene. He observed that the accident was a single vehicle crash and that the vehicle struck the Interstate's concrete median barrier, crossed three lanes of traffic, struck the guardrail on the right side of the road, and stopped. Trooper Miller spoke with Williams, who stated that she was the driver of the vehicle. He smelled the odor of alcoholic beverage emanating from Williams' breath and person; he noticed that she had trouble standing, kept swaying back and forth, and had slurred speech. Trooper Miller asked Williams if she needed any

medical help, and she stated that she was fine. He then asked her if she had anything to drink that night, and she stated that she had a couple of drinks. Trooper Miller administered a field sobriety test to Williams. She failed the test, and Trooper Miller read the implied consent law to her. Williams stated that she did not have a driver's license, but agreed to take the breath test. She was transported to the Adult Processing Center and administered a breath test, which returned a 0.095 alcohol concentration equivalent. Trooper Miller requested Williams' driving record, which indicated that her driver's license was suspended and that she had two outstanding arrest warrants.

[7] Trotter died approximately a week after the accident. An autopsy revealed that Trotter died as a result of a decelerated "blunt force [trauma to] the head" with bruising and bleeding to his brain, which he received as a result of the accident. (Tr. p. 99).

[8] After filing an Information on August 14, 2014, and amending it on August 26, 2014, and June 2, 2015, the State charged Williams with Count I, operating a vehicle while intoxicated endangering a person, a Class A misdemeanor; Count II, operating a vehicle with an alcohol concentration equivalent of 0.08 or more, a Class C misdemeanor; Count III, driving while suspended, a Class A misdemeanor; Count IV, operating a vehicle while intoxicated causing death, a Level 5 felony; and Count V, operating a vehicle with an alcohol concentration equivalent of 0.08 or more causing death, a Level 5 felony. On June 3, 2015, the trial court conducted a jury trial, and Williams was found guilty as charged. On June 17, 2015, the trial court sentenced Williams to an aggregate term of

four years at the Department of Correction on Counts III and IV. The trial court did not enter sentences on the remaining Counts due to double jeopardy concerns.

[9] Williams now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[10] Williams argues that the evidence was insufficient to sustain her convictions. When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Bailey v. State,* 979 N.E.2d 133, 135 (Ind. 2012). The evidence— even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. *Id.* We affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim. *Id.* Moreover, a conviction may be sustained on circumstantial evidence alone so long as there are reasonable inferences from the evidence that enable the fact-finder to find the defendant guilty beyond a reasonable doubt. *Lawrence v. State*, 959 N.E.2d 385, 388 (Ind. Ct. App. 2012), *trans. denied*.

[11] Indiana Code section 9-30-5-5(3) provides that a person who causes the death of another person when operating a vehicle while intoxicated commits a Level 5 felony. Further, Indiana Code section 9-24-19-2 provides that a person who:

(1) knows that the person's driving privilege, license, or permit is suspended or revoked; and

(2) operates a motor vehicle upon a highway less than ten (10) years after the date on which judgment was entered against the person for a prior unrelated violation of section 1 of this chapter, this section, [I.C. §] 9-1-4-52 (repealed July 1, 1991), or [I.C. §] 9-24-18-5(a) (repealed July 1, 2000);

commits a Class A misdemeanor.

[12] First, Williams claims that the evidence was insufficient to prove that she was driving the vehicle at the time of the accident. Identification testimony need not necessarily be unequivocal to sustain a conviction. *Holloway v. State,* 983 N.E.2d 1175, 1178 (Ind. Ct. App. 2013). Elements of offenses and identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. *Id.* As with other sufficiency matters, we will not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. *Id.* Rather, we examine the evidence and the reasonable inferences therefrom that support the conviction. *Id.*

[13] Here, our review of the record reveals that Williams admitted that she was the driver of the crashed vehicle at least twice. When Officer Sechrist first arrived at the accident scene and spoke with Williams, she stated that she was the driver of the vehicle. Then, when Trooper Miller arrived at the scene shortly after Officer Sechrist, he also spoke with Williams, and she again stated that she

was the driver of the vehicle. Williams' admissions continued even further—she stated to the trooper that she had a "couple of drinks." (Tr. p. 50). Finally, when Trooper Miller read the implied consent law to Williams and asked her if she would submit to a breath test, she stated, "I don't have a license already, but I'll take the test." (Tr. p. 58). Thus, Williams made several admissions to the police officers at the accident scene while Trotter was still alive and sitting on the guardrail. However, Trotter died a week later. Once the State amended its charges to reflect Trotter's death, Williams' position changed. At her trial, about a year later, Williams firmly testified that she was not behind the wheel of her vehicle at the time of the accident and that she had only stated she was at the request of another female occupant of the vehicle. Williams' request essentially amounts to an invitation for us to disregard the jury's decision and reweigh the evidence, which we cannot do. *See Bailey*, 979 N.E.2d at 143. As such, we find that the fact that Williams owned the vehicle, the testimonies of the witnesses, her own admissions to the police officers at the accident scene, and the reasonable inferences therefrom were sufficient to enable the jury to find Williams guilty of the charged offenses beyond a reasonable doubt.

[14] Further, as to her conviction for driving while suspended, Williams asserts that the State did not prove beyond a reasonable doubt that "she was aware her [driving] privileges were currently suspended." (Appellant's Br. p. 13). A defendant's knowledge of her license suspension can be inferred from the computer printout of the driving record showing that a suspension of notice was sent to her. *Nasser v. State*, 727 N.E.2d 1105, 1109 (Ind. Ct. App. 2000), *trans.*

*denied*.  "An entry in the driving record of a defendant stating that notice of suspension or revocation was mailed by the [Bureau of Motor Vehicles (BMV)] to the defendant constitutes *prima facie* evidence that the notice was mailed to the defendant's address as shown in the records of [BMV]."  I.C. § 9-14-3-7(c). Our review of the record indicates that a notice of suspension was mailed to Williams on May 1, 2000.  Williams' driving privileges were suspended indefinitely with the effective date of May 15, 2000.  Moreover, when Trooper Miller informed Williams of the implied consent law, she stated that she did not have a driver's license.  During the trial, Williams admitted that she told Trooper Miller that her license was suspended.  Thus, at the time of the accident, she knew that her license was suspended.  At the same time, at her trial, Williams also claimed that she "went to [BMV] to clear up her fines.  She believed the money 'rolled over' and validated her license."  (Appellant's Br. p. 13).  Now, on appeal, after Williams' admission to Trooper Miller and the *prima facie* proof of mailing of the notice to her, she still maintains that the State did not meet its burden of proof.  We find Williams' argument unpersuasive. Her argument, again, essentially amounts to a request for us to reweigh the evidence and disregard the fact-finder's decision.  We cannot do that.  Both conflicting positions were presented at the trial where the jury received an opportunity to weigh the evidence and assess the witnesses' credibility.  At the conclusion of the trial, the jury found Williams guilty of driving while suspended.  As such, we conclude that the State presented sufficient evidence for the jury to find Williams guilty of driving while suspended beyond a reasonable doubt.

[15] Finally, Williams asserts that the State failed to prove beyond a reasonable doubt that her operation of the vehicle while intoxicated was the substantial cause of the death of Trotter. To establish causation, the State must show that the defendant caused the accident. *Smith v. State*, 496 N.E2d 778, 781 (Ind. Ct. App. 1986) (citing *Micinski v. State*, 487 N.E.2d 150, 154 (Ind. 1986) (holding that the State need not prove that the defendant's intoxication caused the accident; the State only need to prove that the defendant caused the accident)), *reh'g denied*, *trans. denied*.

> A conviction for operating while intoxicated causing death requires proof that the defendant's operation of a motor vehicle while intoxicated was a "substantial cause," and not merely a "contributing cause" of the resulting death. The well-settled rule is that the State must prove the defendant's conduct was the proximate cause of the victim's injury or death.

*Abney v. State*, 858 N.E.2d 226, 228 (Ind. Ct. App. 2006) (internal citations omitted).

[16] In *Abney*, a defendant, who was operating his vehicle while intoxicated, struck a bicyclist and left the accident scene. *Id.* at 227. He was apprehended shortly thereafter when police noticed him driving a vehicle with extensive front-end damage—shattered windshield, caved hood and top of the car, and deployed airbag. *Id.* Among other charges, the defendant was convicted for operating a vehicle while intoxicated causing death. *Id.* On appeal, the defendant argued that someone else caused the bicyclist's death—someone else hit the bicyclist, who then, allegedly already deceased, was thrown on top of the defendant's

vehicle. *Id*. at 230. The *Abney* court found that the defendant's claim, and even the opinion of the defendant's accident reconstruction expert, relied on considerable speculation. *Id*. The *Abney* court declined to reweigh the evidence and held that the evidence presented to the jury, which primarily consisted of evidence that the defendant was the substantial cause of the bicyclist's death, was sufficient for the jury to determine beyond a reasonable doubt that the defendant's operation of a motor vehicle caused the bicyclist' death. *Id*.

[17] Here, Williams claims that her operation of the vehicle while intoxicated was not a substantial or proximate cause of Trotter's death because Trotter had a number of other medical conditions that could have caused or contributed to his death. We find that this claim is similar to the defendant's argument in *Abney*; therefore, we find the *Abney* court's decision instructive. By arguing that Trotter's death might have been caused by something other than her operation of the vehicle and the crash, like the defendant in *Abney*, Williams invites us to speculate and reweigh the evidence. We cannot do that. *See id*. Our review of the record in light most favorable to Williams' convictions indicates that she was the driver of the vehicle. She was intoxicated and crashed the vehicle, hitting the Interstate's concrete barrier and the metal guardrail. Williams had several passengers in the vehicle; one of the passengers, Trotter, died in the hospital a week after the accident due to injuries sustained in the crash—*i.e.*, blunt force trauma to his head. We find that this evidence and the reasonable inferences therefrom were sufficient for the jury to determine beyond a

reasonable doubt that Williams' operation of the vehicle while intoxicated caused Trotter's death.

[18] In sum, we decline Williams' request to reweigh the evidence presented at her jury trial. Applying our standards of review, we find that there was substantial and sufficient evidence of probative value allowing the jury to determine beyond a reasonable doubt that Williams was the driver; she was intoxicated while driving; her driver's license was suspended; and she crashed the vehicle and caused Trotter's death.

## CONCLUSION

[19] Based on the foregoing, we hold that the evidence was sufficient to support Williams' convictions.

[20] Affirmed.

[21] Kirsch, J. and Pyle, J. concur