# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 09 2016, 9:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Matheny Hahn Denman & Nix, LLP
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tonya L. Gordon, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 9, 2016 <br><br> Court of Appeals Case No. <br> 35A02-1605-CR-1172 <br><br> Appeal from the Huntington Superior Court <br><br> The Honorable Jeffrey R. Heffelfinger, Judge <br><br> Trial Court Cause No. <br> 35D01-1512-F4-267 |

**Barnes, Judge.**

# Case Summary

Tonya Gordon appeals her conviction for Level 5 felony operating a vehicle while intoxicated causing death. We affirm.

# Issues

Gordon raises two issues, which we restate as:

    I.      whether the trial court properly rejected Gordon's proposed jury instructions regarding intervening cause; and

    II.    whether the trial court's jury instructions resulted in fundamental error.

# Facts

On November 14, 2015, Gordon, her mother, Bridget Ingram, and her stepfather, Dewayne Ingram, attended a wedding in Fort Wayne. After the wedding, they started driving back to Muncie. Gordon was driving with Bridget in the passenger seat and Dewayne in the back seat on the passenger side. Soon after they started driving on I-69, Gordon lost control of the vehicle. The vehicle left the roadway, flipped several times, and stopped in a field. Joseph Didier, a college football coach, was on the team bus returning to Fort Wayne when he saw Gordon's vehicle start flipping. He called 911, and first responders arrived at the scene quickly.

Gordon was not injured in the accident. She told the first officers on the scene that she lost control of the vehicle and that she did not know what caused her to

lose control. Gordon was unsteady on her feet, smelled of alcohol, slurred her words, and had bloodshot and glassy eyes. Gordon failed all of the field sobriety tests, and her BAC was 0.128. Officers found a beer can and a broken bottle of vodka in the vehicle. Additionally, officers found a bag of marijuana and a pipe in the glove box of the vehicle. Bridget had a knot on her forehead and neck and shoulder injuries. Dewayne suffered severe, life threatening injuries, including severe fractures of his C-6 and C-7 vertebrae, a spinal cord injury, and a brain injury. He told paramedics that he could not move or feel anything below his mid-chest. Ultimately, Dewayne suffered respiratory failure and was taken off life support. He died as a result of his injuries.

[5] The State charged Gordon with: (1) Level 5 felony operating a vehicle while intoxicated causing death; (2) Level 6 felony operating a vehicle while intoxicated causing serious bodily injury; (3) Class A misdemeanor operating a vehicle while intoxicated causing endangerment; (4) Class C misdemeanor operating a vehicle while intoxicated; (5) Class C misdemeanor operating a vehicle with an alcohol concentration equivalent to at least .08 but less than .15 grams of alcohol per 100 liters of her blood or 210 liters of her breath; (6) Class B misdemeanor possession of marijuana; and (7) Class C misdemeanor possession of paraphernalia. At the jury trial, Gordon proposed jury instructions regarding intervening causes and argued that the crash was caused by another car hitting her vehicle. The trial court rejected Gordon's proposed instruction, and Gordon did not object to the trial court's final instructions. The jury found Gordon guilty of all charges except the possession of marijuana

and possession of paraphernalia charges. The trial court sentenced her to six years with two years suspended to probation for Count 1, the Level 5 felony operating a vehicle while intoxicated causing death conviction. The trial court "incorporated" the remaining guilty verdicts into Count 1. App. Vol. II p. 203. Gordon now appeals.

## Analysis

### I. Intervening Cause Instructions

[6] Gordon argues that the trial court abused its discretion by rejecting her proposed final jury instructions number 4 and number 5.[1] The trial court has broad discretion as to how to instruct the jury, and we review for an abuse of discretion. *McCowan v. State*, 27 N.E.3d 760, 763 (Ind. 2015). To determine whether a jury instruction was properly refused, we consider: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given. *Id.* at 763-64. In doing so, we consider the instructions as a whole and in reference to each other, and we do not reverse the trial court unless the instructions as a whole mislead the jury as to the law in the case. *Id.*

---

[1] Gordon also mentions her proposed final instruction number 3, but she notes that the trial court's final instruction number 9 incorporated the language of her proposed instruction. Consequently, we do not address her proposed final instruction number 3.

[7] Gordon's proposed final instruction number 4 provided: "An intervening cause is an independent force that breaks the causal connection between the actions of the Defendant and the injury. To qualify as an intervening cause, death must be due to an independent event in which the Defendant did not participate and in which the Defendant could not foresee." App. Vol. II p. 163. Gordon's proposed final instruction number 5 provided: "In analyzing criminal causation, the term 'intervening cause' is used to describe a second event that is so extraordinary that it is unfair to hold the accused responsible for the actual result." *Id.* at 164.

[8] Gordon argues that the proposed instructions were correct statements of the law, were supported by the evidence of her vehicle being hit from behind, and were not covered by other instructions given by the trial court. The State argues that the trial court did not abuse its discretion by denying the proposed instructions because the record did not support giving them. According to the State, there was no evidence of another vehicle hitting the rear of Gordon's vehicle and causing the accident.

[9] In support of her argument, Gordon relies on the testimony of her mother, Bridget. Bridget testified that Gordon lost control after they "got bumped." Tr. p. 115. However, she also testified that she did not see a car hit them. Didier, who witnessed the car beginning to flip over, did not mention another vehicle being involved when he called 911. When asked at the trial whether he saw any other vehicles around Gordon's vehicle, he responded that he "couldn't tell." *Id.* at 123. When officers arrived at the scene, Gordon never mentioned

being hit by another vehicle. In fact, she told officers that she had lost control of the vehicle and that she did not know what caused her to lose control. Sergeant Alan Foster of the Huntington City Police Department testified that, if another vehicle had been involved, they would have found two damaged vehicles at the scene. Officer Robert James of the Markle Police Department testified that Gordon's vehicle did not have damage to the rear bumper, and the photographs of Gordon's vehicle are consistent with that testimony. There was simply no evidence of another vehicle striking Gordon's vehicle and causing the accident. Consequently, Gordon's proposed jury instructions regarding intervening cause were not supported by the evidence, and the trial court properly rejected them. *See, e.g., Lampkins v. State*, 778 N.E.2d 1248, 1253 (Ind. 2002) (holding that the trial court did not abuse it discretion by rejecting the defendant's tendered self-defense instructions where there was no evidence to demonstrate that the defendant acted in self-defense).

## *II. Fundamental Error*

Gordon argues that the instructions given by the trial court resulted in fundamental error. According to Gordon, final instruction number 9 and final instruction number 10 contradicted each other. Final instruction number 9 provided:

> Causing death requires proof that the Defendant's operation of a motor vehicle was a substantial cause of the resulting death, not a mere contributing cause. The State must prove the Defendant's conduct was a proximate cause of the victim's injury or death. Conduct, in this context, is taken to mean the driver's act of

operating the vehicle not any particular way in which the driver operates the vehicle.

App. Vol. II p. 174. Final instruction number 10 provided: "'Cause of death' is that event which initiates a chain of events, however short or protracted, that results in the death of an individual." *Id.* at 175. Gordon argues that final instruction number 10 is an inaccurate statement of the law because it did not mention intervening causes. Gordon also argues that the two instructions conflict because "Instruction No. 9 required the State to prove Gordon's operation of a motor vehicle was a substantial cause of the resulting death, only to provide in the very next instruction that Gordon's operation of a motor vehicle only need to initiate a chain of events, however short or protracted, that results in death." Appellant's Br. p. 13. Gordon concedes that she did not object to the trial court's final instructions.

[11] Where, as here, the defendant failed to preserve an alleged instructional defect, reversal is warranted only in instances of fundamental error. *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016). "Error is fundamental if it is 'a substantial blatant violation of basic principles' and where, if not corrected, it would deny a defendant fundamental due process." *Id.* (quoting *Wright v. State*, 730 N.E.2d 713, 716 (Ind. 2000)). This exception to the general rule requiring a contemporaneous objection is narrow, providing relief only in "egregious circumstances" that made a fair trial impossible. *Id.*

[12] Indiana Code Section 9-30-5-5(a) provides: "A person who causes the death of another person when operating a vehicle . . . while intoxicated . . . commits a

Level 5 felony." A conviction for operating while intoxicated causing death requires proof that the defendant's operation of a motor vehicle while intoxicated was a "substantial cause," and not merely a "contributing cause" of the resulting death. *Abney v. State*, 858 N.E.2d 226, 228 (Ind. Ct. App. 2006). The well-settled rule is that the State must prove the defendant's conduct was the proximate cause of the victim's injury or death. *Id.* But "conduct," in this context, means the driver's act of operating the vehicle, not the particular manner in which the driver operates the vehicle. *Rowe v. State*, 867 N.E.2d 262, 268 (Ind. Ct. App. 2007) (citing *Spaulding v. State*, 815 N.E.2d 1039, 1042 (Ind. Ct. App. 2004)).

[13] Final instruction number 9 was a correct statement of the law, which Gordon concedes. Final instruction number 10, which defined cause of death, does not contradict final instruction number 9. Rather, final instruction number 9 clearly required the defendant's operation of the vehicle to be a substantial cause of the victim's death, and final instruction number 10 defines cause of death as the event that initiates the chain of events. Reading the instructions as a whole, the State was required to demonstrate both that the defendant's actions were a substantial cause of the victim's death and that the defendant's actions initiated the chain of events leading to the victim's death. We find no error in the instructions.

[14] Moreover, even if the instructions are contradictory, we find no fundamental error. The jury was clearly instructed that the State was required to prove Gordon's conduct was a substantial cause of Dewayne's death. There was no

evidence of another vehicle causing the crash. The State presented evidence that Dewayne's spinal cord injuries were caused by the crash and resulted in respiratory failure and ultimately resulted in him being removed from life support. The jury instructions did not cause a substantial blatant violation of basic principles that denied Gordon fundamental due process.

## Conclusion

The trial court did not abuse its discretion by rejecting Gordon's tendered instructions, and the trial court's instructions did not result in fundamental error. We affirm.

Affirmed.

Riley, J., and Bailey, J., concur.